126) and the civil service rules made thereunder. As a consequence, the employment, and whatever was done under it, created no legal charge against the city. McDonald v. Mayor, 68 N. Y. 23, 23 Am. Rep. 144. A person dealing with the agent of a municipal corporation has no right to presume that he is acting within the line of his duty, but must take care to learn the nature and extent of his authority. McDonald v. Mayor, supra. The cases relied on by the plaintiff do not relate to civil service rules made pursuant to statute, which would be defeated entirely if the courts were to hold that, so long as one employed by a city official does work, he is entitled to recover from the municipality irrespective of the question whether the employment was in accordance with or in violation of such rules. Such a principle, carried to its logical extent, would leave open the sole inquiry whether services had been rendered, and eliminate as irrelevant the question whether they were performed under a valid or illegal employment. The court can hardly be expected to subscribe to such a doctrine. There must be judgment for the defendant.

---

(32 Misc. Rep. 522.)

### MEYERS v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

1. INJUNCTION—MUNICIPAL OFFICERS—FRAUDULENT CONTRACTS.

   A complaint by a taxpayer, under Laws 1892, c. 301, authorizing suits by taxpayers against municipal officers to prevent waste likely to result from illegal or dishonest official acts, to restrain the New East River Bridge commissioners from entering into certain contracts, averred that certain requirements, as to receiving bids from such parties only as had plants which had been in successful operation on similar work for a year, and as to certain kinds of steel, which could be furnished by only one company, were unreasonable, and were fraudulently inserted to limit competition. The allegations as to fraud were unsupported by any statement of facts, and were disproved by the commissioners, and the steel required could be furnished by numerous companies. *Held* insufficient to warrant the injunction, since it was not intended by such act to subject the official action of municipal bodies acting within their discretion to the supervision of the courts.

2. SAME.

   Under Laws, 1892, c. 301, authorizing suits by taxpayers against municipal officers to prevent injury likely to result from illegal official acts, a taxpayer cannot restrain the New East River Bridge commissioners from entering into a contract embodying the provisions of the labor law, which will require the contractor to pay more for labor than he would have to pay if allowed to make his own wages for labor, since the insertion of the requirements of such law is in obedience to the law, and cannot be an illegal act, though the labor law may be unconstitutional.

Appeal from special term, New York county.

Action by Julius Meyers against the city of New York and others to restrain defendants from awarding or entering into any contract for building approaches to the New East River Bridge. From an order denying a motion for an order continuing a temporary injunction, plaintiff appeals. Affirmed.

The following is the opinion of the trial court (GILDERSLEEVE, J.):

The plaintiff moves for an injunction pendente lite, enjoining the defendants from entering into any contract for the work of building the approaches on the Manhattan and Brooklyn sides of the New East River Bridge, and from paying out any money under any contract in pursuance of the defendants' advertisement for bids. The complaint avers, in substance, apart from formal allegations reciting certain acts of the legislature, that the plaintiff is a taxpayer of the city of New York; that in July and August last the defendants advertised for sealed bids and estimates for furnishing materials for and constructing the steel and masonry approaches on the Brooklyn and Manhattan sides of the bridge, in accordance with a proposed form of contract, and drawings and specifications therefor; that one of the provisions in the advertisement was that bids would be received only from such parties as have the requisite plants and facilities, which have been in successful operation on work of similar character for at least one year; that the form of contract proposed by the defendants contained a provision. that the contractor should agree to comply with the provisions of the labor law, and that in default thereof the contract should be void. The complaint further alleges that it was also provided that said proposed contract should contain a provision that the "finished steel" shall not contain certain chemical elements to exceed specified limits. The complaint also states, upon information and belief, that the proposed contract, specifications, and advertisements for bids were fraudulently prepared and issued, and that the requirements of the advertisement that bids would be received only from such parties as had the requisite plant and facilities, which had been in successful operation on work of similar character for at least one year, and of the specifications relating to the "finished steel," above mentioned, were unreasonable and unfair, and fraudulently prepared and issued with the purpose and intent of limiting competition, and confining ·it to a small class of bidders, as, by said requirements, competent and reliable bidders, with the requisite plant and facilities, desiring to submit bids for the doing of said work, were prevented from doing so; that the requirements as to the elements of finished steel prohibited the furnishing of steel of any other company than the Carbon Steel Company, whose steel alone meets those requirements; that the provision requiring the contractor to conform to the labor law would oblige him to pay more for labor employed by him than he would have to pay if allowed to make his own wages for labor only by the law of supply and demand, and if he were not restricted to employing citizens of this state. The complaint further avers, on information and belief, that the commissioners are about to enter into contracts with the successful bidders, in the form prescribed in the advertisement. The plaintiff charges that the award of any contract by the defendants for the work advertised would be illegal official acts; that the interests of the taxpayers of the city of New York, including the plaintiff, would be injured thereby, and the city be compelled to pay for work under illegal contracts, greatly to the damage of the city and its taxpayers. The plaintiff prays judgment permanently restraining the defendants from entering into any contract for the work mentioned in the complaint, and directing that the work called for in the advertisements be readvertised and relet, and that the defendants be enjoined from paying out any moneys of the city of New York under the advertisement, or under any contract entered into in pursuance thereof. On the part of the defendants, the affidavits of the commissioners and of their chief engineer and principal assistant engineer were read in opposition to the motion. They deny the principal charges of the complaint. In technical phraseology, they deny the "equity of the bill." Mr. Buck, the chief engineer, denies that the Carbon Steel Company is the only company which manufactures steel which meets the requirements and conditions of the specifications, and says there are at least six other companies which manufacture such steel, and that any manufacturer of open-hearth steel can readily fit his works for producing steel of the kind required by the specifications; and he specifies twenty manufacturers of steel, who, he is informed and believes, are prepared to manufacture steel of the kind and quality called for by the specifications. Mr. Nichols, the principal assistant engineer to the commissioners, states that he believes that the requirement that bids should only be received from parties who have the requisite plant and facilities, and

which have been in successful operation on work of similar character for at least one year, was not an unreasonable or unfair requirement, and that it was necessary in order to secure the highest degree of excellence and material used in the work. He also states that the provision relating to the quality of "finished steel" is reasonable and fair, and he denies that the requirements as to "finished steel" prohibit the furnishing of steel by any other than the Carbon Steel Company, or that that company is the only one which manufactures steel meeting the requirements of the specifications. He also states that more than ninety-nine and one-half per cent. of the steel called for by the specifications is rolled steel, to which those requirements do not apply, and that the elements mentioned in the complaint, required for "finished steel," are for castings, and that those castings do not constitute more than one-half of one per cent. of the eighteen thousand tons required for the work; that that class of work is not now, and never has been, made by the Carbon Steel Company, but is now being made for the steel towers of the bridge, under similar requirements, by the Benjamin Atha & Illingworth Company of Newark, N. J., and the American Steel Castings Company of Pennsylvania. He also says that steel castings of the character required by the specifications can be readily made by any responsible steel-castings company in this country, and that other companies besides those before mentioned by him are prepared to make such material; also, that, in addition to the Carbon Steel Company, steel fully complying with the specifications can be made at the works of six other concerns.

The first confronting question touches the status of the plaintiff. A taxpayer's right to maintain a suit against municipal officers is confined to cases in which waste or injury are likely to result from "illegal, wrongful, or dishonest official acts." It was "not intended to subject the official action of boards * * * and municipal bodies, acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident, or based on errors of judgment, to the supervision of the judicial tribunals." Talcott v. City of Buffalo, 125 N. Y. 286, 26 N. E. 264. So, also, the court of appeals, in a subsequent case, says: "It is absurd to suppose that the legislature, by the statute, intended to draw into the preventive jurisdiction, in equity, at the instance of any taxpayer, any proposed illegal official act, irrespective of the fact whether the act sought to be restrained involves a waste of public property," etc. Rogers v. O'Brien, 153 N. Y. 362, 47 N. E. 457. Evidently the waste spoken of in the statute is one which is the consequence of a palpable violation of law or of currupt designs, not of innocent mistake or error of judgment. In this case no such waste as the statute contemplates can be apprehended; for, although the complaint charges the defendants with having fraudulently made and issued the form of contract, specifications, and advertisement, the allegation of fraud is in itself a mere conclusion, and is unsupported by any statement of facts or by any proof. Moreover, it is disproved by the defendants. But, assuming that injury will accrue to the city if the commissioners enter into contracts embodying the provisions of the labor law, because compliance with it will cause an increase in the expense of the work, that form of injury is not the "waste" of the statute, for the law expressly requires that all municipal contracts shall embody those provisions. Nor, assuming that, as plaintiff's counsel argues, the labor law is unconstitutional, would a contract made by these defendants, embodying its provision as to the hours of labor, and the wages to be paid for labor, be illegal, in the sense of the statute. Laws, 1892, c. 301. That illegality can only be predicated of a contract made in violation of an existing law, whereas, upon the plaintiff's own showing, the defendants here propose to enter into contracts strictly conforming to a certain law, by the insertion of specific provisions, which that law in terms requires shall enter into them. This is in obedience to the law, and cannot be an illegal act. It must be so, even though the law in question be unconstitutional, for it is not to be supposed that the legislature, by the word "illegal," in an act of 1892, had in mind a contract made in strict conformity to its own enactment. It would be a gross solecism to say that the legislature could contemplate the invalidity of its own acts. The question is not whether a contract embodying provisions based on an unconstitutional law is

illegal, but whether the illegality complained of in this case is the particular form of illegality mentioned in the statute under which the plaintiff claims a standing in this case. As to the effect of limiting competition to a small class of bidders, in causing an increase of the cost of the work, which is charged against the defendants, there is no reason to apprehend any such result; for it is amply shown by the affidavits read on the part of the defendants that, so far as respects the requirements for "finished steel," there are twenty concerns which now do, or easily can, produce that kind of steel. So that it appears from these considerations that the apprehension of waste, which alone justifies the interference of the plaintiff, is unfounded. Whether the commissioners have in fact acted wisely, or not, in selecting and insisting upon the use of a certain kind of steel in the construction of the bridge, it is not for the court to sit in judgment upon the exercise by them of that discretion which is vested in them by the legislature. For aught that appears before me, I must assume that they have acted honestly and wisely. Upon their face, or as explained by the defendants, the requirement relative to the article of "finished steel," and the provision limiting bids to parties who have plants and facilities already sufficiently tested, bear the impress of prudent foresight and sound professional judgment on the part of the engineers employed on the work, and must commend themselves to general approval. Practically, the provision relating to finished steel is one of small importance, in view of the fact that it constitutes but one-half of one per cent. of the whole eighteen thousand tons called for by the specifications. The manifest purpose of the requirements and conditions prescribed by the commissioners was to secure such results in the work as would make the structure durable and useful. At all events, they cannot be said to be so unreasonable or unfair as to constitute an abuse of the discretion which the legislature has intrusted to the commissioners. So far as the policy of the commissioners may tend to limit competition, it must be remembered that the purpose of the law in requiring municipal corporations to invite competition for public works is based on sound economic considerations. It was never intended that municipal commissions should preside irresponsibly over the competition of unqualified bidders merely for the purpose of furthering the interests of business. The first consideration in a work of this magnitude is safety and permanence, and all conditions and qualifications affecting bidder and contract must tend to secure these.

The labor law, so called, has been before the appellate division on several occasions, when its constitutionality might properly have been drawn in question; but no opinion against the validity of the law seems to have been expressed, and I do not feel disposed to depart from the rule—of judicial propriety, at least—that a single judge sitting at special term should not, except in a palpable case, assume to pronounce an act of the legislature a violation of the constitution. But the plaintiff, as I view his position, has not established a sufficient status to maintain this action, nor, aside from this question, shown meritorious grounds for an injunction. The motion is denied with ten dollars costs. Order to be settled on notice.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

L. L. Kellogg, for appellant.
G. Hill, for respondents.

VAN BRUNT, P. J. The order should be affirmed, upon the opinion of Mr. Justice GILDERSLEEVE in the court below.

Order affirmed, with $10 costs and disbursements. All concur.