pay the legacy to the plaintiff, but a direction to the defendant, when he got hold of the will, to strike out the deceased legatee and insert the name of the plaintiff, and to do it as soon as legality permitted. There was no direction to the defendant to pay, no statement that he was expected to pay without a change of the will, simply a direction to change the will, which was never consummated. How it can be said that this implied a promise on behalf of the defendant to pay this legacy I cannot understand.

I think that the judgment should be reversed, and the complaint dismissed.

LAUGHLIN, J., concurs.

---

### BUSH v. NEW YORK LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. December 3, 1909.)

1. CONSTITUTIONAL LAW (§ 126*)—REGULATIONS—POWERS OF STATE.

The state may grant to domestic corporations such powers as it pleases, and under the power reserved by the Constitution the state may amend or repeal the charter of a corporation, and give in the charter, or the amendment thereto, greater power than is given to other corporations, or restrict the powers of one corporation, without violating any constitutional right secured to corporations by the federal or state Constitutions.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 325, 366–369; Dec. Dig. § 126.*]

2. STATUTES (§ 79*)—SPECIAL LEGISLATION—GRANTING EXCLUSIVE PRIVILEGES—STATUTES.

Insurance Law, § 96, as added by Laws 1906, p. 794, c. 326, re-enacted in Consol. Laws, c. 28, limiting the amount of new business which domestic corporations may do, but exempting therefrom a corporation more than one-half the outstanding insurance of which on a designated date consisted of industrial insurance, regulates the method of transacting business of certain corporations, and restricts them as to the amount of business that they may do; and the fact that another corporation is not so restricted is not a grant to it of an exclusive privilege, immunity, or franchise, within Const. art. 3, § 18, prohibiting the Legislature from passing any local law granting to any private corporation any exclusive privilege, immunity, or franchise.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 84, 85; Dec. Dig. § 79.*]

3. STATUTES (§ 106*)—SUBJECTS AND TITLES OF ACTS—LOCAL LAW.

The section is an amendment to a general law providing for the incorporation and the regulation of the business of insurance companies, and is not a private or local bill, within Const. art. 3, § 16, prohibiting the passage of any private or local bill embracing more than one subject, which shall be expressed in the title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 120; Dec. Dig. § 106.*]

4. CONSTITUTIONAL LAW (§ 240*)—EQUAL PROTECTION OF THE LAW—LIMITING INSURANCE BUSINESS.

The section does not violate the federal Constitution, guaranteeing the equal protection of the law, since the state is not required to grant to each domestic corporation the same power in relation to its business.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 692; Dec. Dig. § 240.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

5. INSURANCE (§ 84*)—SOLICITING AGENTS—CONTRACTS.

 A soliciting insurance agent, who has performed his contract requiring him to procure a specified amount of new insurance annually, may recover the amount which the insurance company agreed to pay, though the company refuses to accept the insurance procured, because of Insurance Law, § 96, as added by Laws 1906, p. 794, c. 326, and re-enacted in Consol. Laws, c. 28, limiting the amount of new business.

 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

Appeal from Special Term, New York County.

Action by Charles H. Bush against the New York Life Insurance Company. From a judgment of the Special Term (63 Misc. Rep. 89, 116 N. Y. Supp. 1056), sustaining a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, McLAUGHLIN, and SCOTT, JJ.

Julius M. Mayer, for appellant.
James H. McIntosh, for respondent.
Edward R. O'Malley, Atty. Gen., for the People.

INGRAHAM, J. This action was brought to obtain an adjudication upon the constitutionality of section 96 of the insurance law, which was added to the insurance law by chapter 326, p. 794, Laws 1906, and re-enacted in Consol. Laws, c. 28 (chapter 33, p. 16, Laws 1909). The defendant demurred to the complaint, which demurrer the court below sustained, and from the judgment sustaining that demurrer the plaintiff appeals. Upon this appeal the defendant has submitted a brief, but its counsel stated on the argument that the defendant concurred with the plaintiff that this law was unconstitutional, but, as the Attorney General was to submit a brief on behalf of the state, he left the discussion as to the constitutionality of the act with the counsel for the plaintiff and the Attorney General.

The complaint alleges that the defendant is a life insurance company organized under the laws of the state of New York; that the plaintiff was an agent of the defendant for procuring new insurance. It would appear that there was an association among the defendant's agents, called the "Nylic for Agents"; that on the 1st of March, 1900, the plaintiff applied for membership in this association and agreed to be bound by the terms of such membership as set forth in the defendant's authorized publications; that the defendant duly admitted the plaintiff as a member of the said "Nylic for Agents," and the plaintiff has continued to be such member, and has enjoyed and is entitled to enjoy all the benefits, advantages, and emoluments, and membership therein; that by the agreements under which this association is formed these memberships are composed of five classes, each to continue for a period of five years; that if, during the first period of five years, each "Nylic" actually produced not less than $50,000 new insurance on other lives than his own, upon which one full year's premi-

um is paid, the "Nylic" was to receive a certain specified compensation from the defendant, and was to continue to be a member of the class; that plaintiff complied with this condition for five years, and on the 1st of January, 1906, he became what he calls a "Nylic of the First Degree," the duration of which was to be for five years from January 1, 1906, provided the plaintiff procured each year not less than $50,000 of new insurance written on other lives than his own on which one full year's premium was paid; that the plaintiff continued to hold said membership until the year 1908,. upon which the plaintiff was entitled to receive a certain percentage of the business that had been procured by him. The complaint then alleges that during the year 1908 the plaintiff had procured applications for new insurance on other lives than his own, on which one full year's premium had been paid, aggregating the sum of $43,000, in addition to the application for insurance on the life of one Burnett; that on the 23d day of December, 1908, the plaintiff procured an application from Burnett for $25,000 new insurance on his life on the ordinary life plan, premiums payable annually, and also received from the applicant the sum of $662.50, which was the first annual premium for the insurance so applied for by him; that Burnett was examined by one of the defendant's medical examiners, and was shown to be of sound health and a first-class risk; that on the 24th day of December, 1908, the plaintiff delivered such application and written report of the medical examiner to the defendant, and tendered to the defendant the amount of the said first premium, and requested the defendant to issue a policy on the life of Burnett; that the defendant then and there failed and refused to issue said policy, and rejected said application, admitting that the application papers were regular and satisfactory and the applicant was a desirable risk, but refused the application upon the ground that the defendant was, under section 96 of the insurance law, prohibited from issuing in any year new policies for a larger amount in the aggregate than $150,000,000; that during the said year 1908 the defendant had already received premiums on new policies aggregating $135,000,000, and in addition thereto had written new policies aggregating $30,000,000, which it had sent out for collection of the first premium and delivery, and that the defendant had already issued in the year 1908 new policies for so large an amount in the aggregate that, on account of said limitation imposed by said, law, and in order to keep within the same, the defendant had discontinued issuing in said year 1908 any more new policies, and for this reason, and for this reason alone, the defendant there and then rejected said application; that if the plaintiff did not furnish $50,000 of new insurance in any one year he would lose his membership in the "Nylic," and could not be restored or become a member thereof, because under section 96 of the insurance law the defendant has discontinued admitting new members into the "Nylic for Agents," and the plaintiff would thus lose the benefit of his contract with the. defendant, under which he was entitled to a certain percentage of the business that he had procured. The plaintiff asks judgment that the court should adjudge and decree that the refusal of the defendant to accept said premiums and issue the policy referred to was without just cause or ex-

cuse; that the defendant be enjoined and restrained from canceling or forfeiting the said membership of the plaintiff in "Nylic for Agents"; that the defendant be compelled to credit the plaintiff in said Nylic account for the year 1908 with the said $25,000 insurance; and that the defendant be required to pay to the plaintiff his commissions on the first premium on the policy of insurance of Burnett therein described.

There are other allegations of the complaint tending to show that these provisions of section 96 of the insurance law applied to all of the large insurance companies incorporated under the laws of the state of New York, except the Metropolitan Life Insurance Company, and that under this law the Metropolitan Life Insurance Company is given the privilege of issuing unlimited insurance, while the other companies, including the defendant, are limited by the law to a certain amount of new insurance in each year.   Section 96 of the insurance law provides that:

"No domestic life insurance corporation, except a corporation more than one-half of the outstanding insurance of which on December thirty-first, nineteen hundred and five, consisted of industrial insurance, shall issue in any year new policies for a larger amount in the aggregate than as follows, to wit:   If the total amount of the insurance by said corporation in force on the thirty-first day of December of the preceding year, including only policies upon which the first premiums have actually been received, is in excess of fifty million dollars, the amount of new insurance which may be issued shall be determined by the following percentages of said insurance in force, to wit:   If said insurance in force is more than fifty million dollars and less than one hundred million dollars, not more than thirty per centum thereof; if more than one hundred million dollars and less than three hundred million dollars, not more than twenty-five per centum thereof; if more than three hundred million dollars but less than six hundred million dollars, not more than twenty per centum thereof; if more than six hundred million dollars but less than one thousand million dollars, not more than fifteen per centum thereof; and if said amount of insurance in force shall be in excess of one thousand million dollars, not more than one hundred and fifty million dollars of new insurance shall be issued."

The claim is made that in some way the state of New York is prohibited from restricting corporations that it has created as to the amount of new business which they shall engage in, or limiting them as to the business in which they can engage.   I suppose that there could be no question as to the power of the state to grant such power to corporations which it organized as it pleased, or that under the reservation of power by the present Constitution the state had the right to amend or modify the charter of any corporation, or repeal or annul said charter altogether; and the fact that either by the original charter or an amendment to the charter of a corporation such corporation was given greater power than that given to other corporations, or that the powers of one corporation were restricted, so that it had the right to exercise less power than other corporations organized by the state, was not a violation of any constitutional right assured to any of the corporations by either the Constitution of this state or the Constitution of the United States.   The plaintiff claims that this section is a violation of section 18 of article 3 of the Constitution of this state. That provides that:

"The Legislature shall not pass a private or local bill * * * granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever."

It is quite clear that this is neither a private nor local bill, and it grants to no corporation exclusive privileges, immunity, or franchise. It regulates the method of transacting business of certain corporations which it has organized, and restricts them as to the amount of business that they are authorized to do; but the fact that another corporation is not so restricted is not a grant of an exclusive privilege, immunity, or franchise to the unrestricted corporation. It is quite unnecessary to consider the various cases in which this clause of the Constitution has been discussed. We have examined them all, and no case which is at all controlling has held that this provision of the Constitution applies to such an act as the one in question. Nor does this act violate in any way section 16 of article 3 of the Constitution, which provides that:

"No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title."

This section 96 of the insurance law is an amendment to a general law providing for incorporations and regulating the business of insurance companies. It is neither a private nor a local bill. I cannot see that this bill violates any provision of the federal Constitution. Equal protection of the law does not require a state to grant to each corporation that it organizes the same power to transact business or in relation to its business. It certainly would be within the power of the state to annul the charter of every life insurance company that it had organized, if it wished, without infringing any provision of the federal Constitution.

The case of Cotting v. Goddard, 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, which is relied upon by the plaintiff, was one regulating in the state of Kansas the business of public stockyards, and applied to corporations as well as to private individuals. It was not a law regulating the powers of a corporation organized by the state of Kansas; and what was said by the court in that case has clearly nothing to do with the question as to the power of the state to regulate the business of corporations organized under its laws.

It is claimed, however, that the question as to the constitutionality of the law is before the court in this case. In the first place, it is nowhere distinctly alleged that the defendant had reached its $150,000,-000 limit. It is simply alleged that the defendant refused to accept the insurance offered by the plaintiff upon the ground that the company had actually issued insurance to the amount of $135,000,000 of new insurance and had issued policies for $30,000,000 of new insurance upon which premiums had not been paid and the policies had not become operative. This is not an allegation that the $150,000,000 limit had been reached. Nor do I think that the fact that the company refused this insurance because of this law or otherwise would result in the plaintiff losing his position in this organization. If the plaintiff has performed the contract on its part, a failure of the defendant to accept insurance offered would not result in the plaintiff losing his position, or interfere with his right to recover the amount which the

defendant agreed to pay. The plaintiff would still have his action at law against the defendant to recover the amount due to him under its contract, and no act of the defendant in refusing to accept insurance, and no breach of the contract on the part of the defendant, could affect his right to recover, or give him an action in equity to restrain the defendant from refusing to recognize this legal obligation. It is quite clear, upon the complaint in this action and the conduct of the defendant in relation to it, that the action is a collusive one, and brought to obtain a judgment which both parties to the action desire, and is not, therefore, an application in good faith to enforce an existing right.

The judgment should be affirmed, with costs.

McLAUGHLIN, LAUGHLIN, and SCOTT, JJ., concur. PATTERSON, P. J., concurs in result.

---

FLETCHER v. BANKERS' LIFE INS. CO. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    December 3, 1909.)

1. INSURANCE (§ 253*)—LIFE INSURANCE—APPLICATION REFERRING TO PRIOR EXAMINATION—CONSTRUCTION.

A medical examiner instead of repeating the questions contained in the application, inserted a statement that the applicant asserted that the statements made in a prior examination for insurance in another company still held good and were valid in regard to the pending examination. *Held*, that this should be construed as intended to reiterate the truth of the answers given on the prior examination.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 538; Dec. Dig. § 253.*]

2. INSURANCE (§ 300*)—APPLICATION FOR LIFE INSURANCE—FALSE ANSWER AS TO PRIOR APPLICATION.

Where an applicant for life insurance knew when examined that he had applied to another company and a policy had not been issued, an answer stating that he had never applied for insurance for which a policy was not issued was clearly false, though he was told by the examiner that he was postponed for a further examination.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 679; Dec. Dig. § 300.*]

3. INSURANCE (§ 300*)—LIFE INSURANCE—MATERIALITY OF PRIOR REJECTION—BREACH OF WARRANTY.

A prior rejection of insured by another company was most material to the risk, and a false statement in respect thereto was a clear breach of his warranty as to the truth of statements on his application offered as a consideration of the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 679; Dec. Dig. § 300.*]

Appeal from Trial Term, New York County.