William C. Hecht, Jr., J.
The Condon-Wadlin Law (Civil Service Law, § 108) provides that no person holding a position by appointment or employment in the government of the city or any of its political subdivisions, or of a municipality, or in the public school service, “ or in the service of any authority, commission, or board ” “shall strike ” (subd. 2); a person violating the provisions of the section may be employed or re-employed; however, 1 ‘ his compensation shall in no event exceed that received by him immediately prior to the time of such violation,” and (presumably) “ shall not be increased until after the expiration of three years from such * * * employment or re-employment ” (subd. 5). (See Matter of Weinstein v. New York City Tr. Auth., 49 Misc 2d 170.)
Any taxpayer shall have standing to institute an action in the Supreme Court to declare illegal or restrain payment of salary or compensation in violation of any provision of the Civil Service Law and to recover sums illegally paid from appointing and fiscal officials (§ 102, subds. 1, 2).
As is well known, the recent transit strike was settled on the basis of paying increases to the employees of the New York City Transit Authority, who had gone out on strike. One Weinstein brought on a proceeding, pursuant to the above statutes, to enjoin as illegal the offering or paying by the Authority and the Municipal Civil Service Commission to the strikers of any amount in excess of their compensation in effect prior to the strike on January 1, 1966, for at least three years after resumption of their employment. In a learned and comprehensive opinion, Mr. Justice Saypol overruled the objections of respondents in points of law, saying: ‘ ‘ While the case for relief for petitioner is clear, summary judgment may not be granted before answer,” and gave respondents 10 days in which to answer. (Matter of Weinstein v. New York City Tr. Auth., supra, p. 184.)
*614 Thereupon, the Legislature enacted chapter 6 of the Laws of 1966, which was signed by the Governor on February 16,1966. The law reads as follows:
‘1 Section 1. Declaration and findings. The legislature hereby finds that there is imminent danger of a renewal of the transit strike in the city of Few York; that a transit strike in January nineteen hundred sixty-six brought human suffering and severe economic hardships to many and inconvenience to all; that such strike was a tragedy affecting the lives and livelihood, the safety and well-being of sixteen million people in the world’s greatest metropolitan area, and a repetition would be disastrous and intolerable; that such strike was settled after twelve days of chaos, on the basis of the report of a mediation panel requested by the mayor of the city of Few York; that the parties accepted in good faith the terms contained in such report and the transit workers returned to their jobs; that the present critical situation arises out of a serious question raised in the courts as to the legal capacity of the Few York city transit authority and the Manhattan and Bronx surface transit operating authority to approve the terms of the agreement which settled the recent catastrophic strike; that the provisions of this act are necessary in order to protect the health, safety and welfare of the sixteen million people of the Few York city metropolitan region against another transit strike and to authorize the approval of the agreement which settled the strike in January.
“ § 2. Fotwithstanding any other provisions of law to the contrary the Few York city transit authority and Manhattan and Bronx surface transit operating authority are hereby authorized and empowered to continue in employment their hourly-rated operating employees, in the same status as such employees held on December thirty-first, nineteen hundred sixty-five and to pay them the increased compensation contained in the report of a certain mediation panel appointed by the mayor of the city of Few York, pursuant to which the employees resumed their duties in the operations of their respective transit facilities.
“ § 3. This act shall take effect immediately.”
The present proceeding is brought by Blaikie as “ a resident, voter and taxpayer in and of the City and State of Few York for the past fifty-nine years,” “ on behalf of himself as a citizen, resident and taxpayer, and other persons similarly situated.” It asks for judgment (a) declaring chapter 6 of the Laws of 1966 unconstitutional as in violation of section 11 of *615 article I and section 17 of article III of the State Constitution, and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States; (b) enjoining the New York City Transit Authority, the Manhattan and Bronx Surface Transit Operating Authority, the Mayor and Comptroller of the city, and the city Civil Service Commission, from continuing in the employ of the two authorities the employees who participated in the strike, and enjoining defendants from granting any increases in pay or any other benefits or emoluments to the same employees. A similar proceeding was brought by one Maidman, alleging himself to be a taxpayer of the city.
Defendants have moved to dismiss the complaint. That motion is joined by the Attorney-General, who intervened in support of the constitutionality of the statute, and by the unions representing the transit employees.
One hundred ten licensed ferry officers, who have been subject to the penalties imposed by the Condon-Wadlin Law, have moved that, if the court sustains the argument of unconstitutionality, the appropriate procedure is to enter a judgment declaring the entire section of the Civil Service Law to be unconstitutional. This contention may be summarily disposed of. If chapter 6 of the Laws of 1966 be found to be unconstitutional, the only course open to the court is to so declare, without affecting the Condon-Wadlin Law itself. The constitutionality of that law can no longer be questioned. (New York City Tr. Auth. v. Loos, 2 Misc 2d 733 [Lupiano, J.], affd. 3 A D 2d 740; Pruzan v. Board of Educ. of City of N. Y., 25 Misc 2d 945 [Markowitz, J.], affd. 12 A D 2d 923, affd. 9 N Y 2d 911.)
Section 11 of article I of the New York Constitution provides: “No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights * * * by the state or any agency or subdivision of the state.” The Fourteenth Amendment to the Federal Constitution provides (§ 1): “ No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States * * * nor deny to any person Avithin its jurisdiction the equal protection of the laws.”
It is obvious that such discrimination as may exist, by virtue of the enactment of chapter 6 of the Laws of 1966, is not predicated on “race, color, creed or religion.” The effect of it simply is that employees of the New York City Transit Authority and of Manhattan and Bronx Surface Transit Operating Authority are exempt from the penalties which apply to other public *616 employees. These other employees are not deprived of their privileges and immunities as citizens by the penalties of the Condon-Wadlin Law, merely by virtue of the fact that those penalties are not applied uniformly to all public employees.
The problem comes down to whether the Legislature might reasonably make this distinction between transit employees and all other public employees. If there is any reasonable basis on which the Legislature could make such a distinction, it is not for the court to question the wisdom or fairness of their action.
The cases on this subject are many and unequivocal. A few of the more important ones will he discussed.
In Williamson v. Lee Optical Co. (348 U. S. 483) the court upheld an Oklahoma statute which made it unlawful for any person not a licensed optometrist or ophthalmologist to fit lenses to a face or to duplicate or replace into frames, lenses or other optical appliances, except upon written prescriptive authority of an Oklahoma licensed ophthalmologist or optometrist. In reversing the District Court, the court said, per Douglas, J. (pp. 488-489): “ Secondly, the District Court held that it violated the Equal Protection Clause of the Fourteenth Amendment to subject opticians to this regulatory system and to exempt, as § 3 of the Act does, all sellers of ready-to-wear glasses. The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. * * * Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others. * # * The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here.”
In New York ex rel. Bryant v. Zimmerman (278 U. S. 63) the court upheld the constitutionality of article 5-A of the New York Civil Rights Law. This required ‘ ‘ Every existing membership corporation [which] requires an oath as a prerequisite or condition of membership, other than a labor union or a benevolent order mentioned in the benevolent orders law” to file certain, documents with the Secretary of State (§ 53). Any corporation failing to do so and any officer of such corporation is guilty of a misdemeanor. The court said, per Yak Devakteb, J. (p. 73), quoting from Holmes, J., in Patsone v. Pennsylvania (232 U. S. 138, 144): “ ‘ The question is a practical one dependent upon experience. The demand for symmetry ignores the specific *617 difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named. * * # The state ‘ ‘ may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.” ’ ”
The opinion of Pound, J., in the New York Court of Appeals, reads (People ex rel. Bryant v. Zimmerman, 241 N. Y. 405, 412-413): “Assuming that all might be included, on judicial review, a classification is not held to be bad because it is not comprehensive. The Legislature need not attack the whole evil at once. (Keokee Coke Co. v. Taylor, 234 U. S. 224, 227.) Certain oath-bound societies have in the past, as matter of common knowledge, been revolutionary and a menace to established government. For the purpose of regulating Sunday labor one rule has been made for barbers in New York and Saratoga, while another rule is applied to the rest of the State. (People v. Havnor, 149 N. Y. 195.) As an oath is recognized by many as the highest form of obligation, a distinction may reasonably be made between oath-bound secret societies and societies which bind their members by pledges of less time-honored solemnity and between accepted oath-bound societies and oath-bound societies in general. The classification we have to consider is real and readily made as matter of form. It may not rest on a very substantial basis in the opinion of many, but ‘ the power to declare a law unconstitutional is always exercised with reluctance.’ (Pollock v. Farmers’ Loan & Trust Co., 157 U. S. 429, 554.) The enactment before us may be upheld as not 1 actually and palpably unreasonable and arbitrary ’ on the authority of precedents which have gone far to uphold legislative power in matters of classification. (Radice v. New York, 264 U. S. 292, 296, 297.) It rests on an opinion reasonably permissible for its validity.”
The opinion in Bryant cited Radice v. New York (264 U. S. 292) and Miller v. Wilson (236 U. S. 373).
In Radice v. New York (supra) the court upheld the constitutionality of a New York statute prohibiting the employment of women in restaurants in cities of the first and second class between the hours of 10:00 p.m. and 6:00 a.m., despite the fact that it excluded from its operations women employed in restaurants as singers and performers, attendants in ladies’ cloakrooms and parlors, as well as those employed in dining rooms and kitchens of hotels, and in lunch rooms or restaurants conducted by employers solely for the benefit of their employees. *618 The court said, per Sutherland, J. (264 U. S. 292, 296-297): “ The statute does not present a case where some persons of a class are selected for special restraint from which others of the same class are left free * * * but a case where all in the same class of work are included in the restraint0. * * * The inequality produced, in order to encounter the challenge of the Constitution, must be ‘ actually and palpably unreasonable and arbitrary.’ * * * More directly applicable are recent decisions of this court sustaining hours of labor for women in hotels, but omitting women employees of boarding houses, lodging houses, etc. * * * and limiting the hours of labor of women pharmacists and student nurses in hospitals, but excepting graduate nurses ”.
In Miller v. Wilson (supra) the court extended the constitutionality of a California statute forbidding employment of women in hotels for more than 8 hours a day or 48 hours a week, but which permitted such employment in connection with certain farming operations. The court said, per Hughes, J. (pp. 383-384); ‘ ‘ The contention as to the various omissions which are noted in the objections here urged ignores the well-established principle that the legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. Dealing with practical exigencies, the legislature may be guided by experience. * * * It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may ‘ proceed cautiously, step by step, ’ and ‘ if an evil is specially experienced in a particular branch of business ’ it is not necessary that the prohibition ‘ should be couched in all-embracing terms. ’ * * * If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.”
A lucid recent expression of this doctrine is found in the decision of Mr. Justice Nolah, in affirming the constitutionality of New York’s Full Crew Laws applicable to railroads alone, He said (New York Cent. R. R. Co. v. Lefkowitz, 46 Misc 2d 68, 94-95): “ Neither do I find that these statutes contravene the equal protection clause of the Fourteenth Amendment, or of section 11 of article I of the Constitution of the State of New York. It is well established that the prohibition of the equal protection clause goes no further than the invidious discrimination (Williamison v. Lee Optical Co., 348 U. S. 483, 489, supra). Neither our own Constitution nor the equal protection clause of the Fourteenth Amendment takes from our Legislature *619 the power to classify in the adoption of police laws, hut admits of the exercise of a wide scope of discretion in that regard. Neither is it required that every State regulatory statute apply to all in the same business or industry. Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind (Morey v. Doud, 354 U. S. 457, 465). That the full crew laws single out the railroads from other competing forms of transportation may seem unfair, and even unwise, but there are obvious differences between railroads and other forms of transportation, both in relation to methods of operation and relations to the public, and statutes regulating railroad operations do not deny equal protection of the laws merely because they do not purport to regulate other forms of transportation (cf. New York Cent. & Hudson Riv. R. R. Co. v. Williams, 199 N. Y. 108,123).”
It follows that the attacks based on section 11 of article I of the New York State Constitution and the Fourteenth Amendment to the Federal Constitution are overruled.
The next attack is based on section 17 of article III of the New York State Constitution, which provides: ‘ ‘ The legislature shall not pass a private or local bill in any of the following cases: * * * Granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever. ’ ’
The attack based on this provision has no merit, for two reasons.
First, the grant of the right of re-employment of the strikers without penalty, if it be deemed a “ privilege or immunity,” is granted, not to a private party, but to the New York City Transit Authority and the Manhattan and Bronx Surface Transit Operating Authority, which are both public benefit corporations. (Public Authorities Law, §§ 1201, 1203-a.) In Matter of Union Ferry Co. (98 N. Y. 139) the court held that granting the power of eminent domain to a ferry company which leased a city dock did not violate this statute, because the company, though itself a private corporation, would be using that power merely as an agency of the city, its lessor. In Matter of New York State Teachers’ Retirement System v. Department of Assessment and Taxation of the City of Albany, and in Matter of New Yorlc State Employees’ Retirement System v. Commissioner of Assessment of the City of Albany (10 N Y 2d. 904) the court affirmed three opinions of Special Term (20 Misc 2d 747, 751 and 752), holding that statutes exempting real estate owned by the two petitioners did not violate the prohibition of section 17 of article III against “ Granting to any person, association, *620 firm or corporation, an exemption from taxes on real or personal property” (emphasis supplied) despite the fact that this prohibition was broader than that against “ private ” entities embraced in the sentence involved here.
More important, chapter 6 of the Laws of 1966 does not grant an exclusive privilege or immunity, even if it be deemed that the grant runs to the transit employees who are benefited, rather than to their employer.
This is established by the Union Ferry Company case, supra, where the court said (per Rapallo, J., 98 N. Y. 139, 150): “ But, assuming that it is a privilege or a franchise granted to the Union Ferry Company as a private corporation, is it an ‘ exclusive ’ privilege or franchise within the meaning of the Constitution? The constitutional prohibition was evidently aimed at monopolies. At granting to corporations or individuals not merely privileges and franchises not possessed by others, but the right to exclude others from the exercise or enjoyment of like privileges or franchises ” (emphasis supplied).
This principle was expressed in Trustees of Exempt Firemen’s Fund v. Rome (93 N. Y. 313) where the court upheld the constitutionality of legislation ‘ ‘ which requires the agents of insurers, not incorporated under the law of the State, to pay annually, to the treasurer of the Exempt Firemen’s Benevolent Fund of the city of New York, a percentage upon the gross premiums received by them for insurance upon property in that city.” The court said, per Finch, J. (pp. 328-329): “ The substance of the grant is simply a right to receive, for a specific period of time, a certain proportion of public funds, and if that right be deemed a privilege, it is in no just sense exclusive. That phrase was intended to describe grants in the nature of monopolies, of such inherent or statutory character as to make impossible the co-existence of the same right in another, and the language has no application to the case of an appropriation of public money or the proceeds of a tax to public uses or for a public purpose. The right of the plaintiff to collect and enjoy the proceeds of the tax would be in no respect disturbed or invaded if the State should give to another corporation in the same locality the right to collect a similar and further tax of two per cent from foreign insurance companies upon their premiums on business in the same city or town.”
Finally, in Bush v. New York Life Ins. Co. (135 App. Div. 447) the court sustained the constitutionality of a statute restricting the amount of any insurance which could be written by a life insurance company to a stated percentage of their insurance then in force, but exempting from its provisions any life insur *621 anee company more than half of whose outstanding insurance consisted of industrial policies. The court said, per Ihgkaham, J. (p. 452): “ It is quite clear that this is neither a private nor local bill, and it grants to no corporation exclusive privileges, immunity or franchise. It regulates the method of transacting business of certain corporations which it has organized and restricts them as to the amount of business that they are authorized to do; but the fact that another corporation is not so restricted is not a grant of an exclusive privilege, immunity or franchise to the unrestricted corporation. It is quite unnecessary to consider the various cases in which this clause of the Constitution has been discussed. We have examined them all, and no case which is at all controlling has held that this provision of the Constitution applies to such an act as the one in question.”
The rationale of these cases is clear. A statute offends the prohibition against the grant of “ any exclusive privilege, immunity or franchise ” (emphasis supplied), only if it precludes the granting of a similar privilege, immunity or franchise to another. That objection does not apply to chapter 6 of the Laws of 1966.
The Legislature is not precluded by its language from giving the same privilege or immunity from penalty for striking to any other public employee. It has failed to do so up to this point because of its conclusion that exemption of transit employees is a reasonable classification — something which the Legislature has the constitutional right to do, as already demonstrated. This is no more the grant of an exclusive privilege or immunity to the transit employees than the railroad Full Crew Law is a grant of exclusive privilege or immunity to railroad employees, despite the fact that such regulations are not imposed on other industries.
Respondents have urged dismissal of the complaint on the ground that the status of plaintiff as a citizen, resident and taxpayer of the city and State does not confer sufficient standing to attack the constitutionality of a State statute in the absence of a showing of a direct personal or property interest of the plaintiff. This proposition is established by unassailable authority. (St. Clair v. Yonkers Raceway, 13 N Y 2d 72, 76; Bull v. Stichman, 273 App. Div. 311, 316, affd. 298 N. Y. 516 ; Schieffelin v. Komfort, 212 N. Y. 520, 529-530; Thompson v. Wallin, 276 App. Div. 463, 466.) This impediment to plaintiff’s action is not removed by section 51 of the General Municipal Law. (Schieffelin v. Komfort, supra; Black v. Impellitteri, 305 N. Y. 724; Dorsey v. Stuyvesant Town Corp., 299 N. Y. 512, 521; Mey *622 ers v. City of New York, 32 Misc. 522, 526, affd. on opinion below, 54 App. Div. 631; Smith v. City of Buffalo, 191 Misc. 439, 444-445. See, also, Headley v. City of Rochester, 272 N. Y. 197, 204.)
The foregoing proposition is sufficient to warrant dismissal of the complaint. However, in view of the public interest involved, it seemed desirable to point out that there is no basis on the merits for an attack on the constitutionality of chapter 6 of the Laws of 1966.
Plaintiff’s motion for an injunction is denied; defendants’ motions to dismiss the complaint are granted.