William J. Schieffelin, Appellant, *v.* Valentine Komfort et al., Constituting the Board of Elections and Custodians of Primary Records for the County of Albany et al., Respondents.

Constitutional law — jurisdiction — courts of equity have no power to set aside a statute as unconstitutional except in an actual controversy between litigants — action to restrain nomination and election of delegates to constitutional convention under the statute (L. 1913, ch. 819) — when such action cannot be maintained by a citizen.

1. There is no inherent power in a court of equity to set aside a statute as unconstitutional except in a controversy between litigants where it is sought to enforce rights or to enjoin, redress or punish wrongs affecting the individual life, liberty or property of the litigants.

2. It was not the intention of the people, by the Constitution, to confer upon the judicial branch of government authority at the suit of a citizen, as such, to sit in review of the acts of other branches of government. A court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceedings are affected. The rights to be affected must be personal as distinguished from the rights in common with the great body of people.

3. This action is brought by an individual against the persons constituting the board of elections and custodians of primary records in each of the sixty-two counties of the state, and against the secretary of state, for an injunction to restrain the boards of elections and the election officials of the state from taking steps preliminary to the nomination and election of delegates to a constitutional convention, provided for by chapter 819 of the Laws of 1913. Pursuant to that act a special election was held April 7, 1914, and a majority of the electors voting on the question " Shall there be a convention to revise the Constitution and amend the same ? " voted in the affirmative. *Held,* that the action is not authorized by either section 1925 of the Code of Civil Procedure or section 51 of the General Municipal Law, nor can it be maintained as an action in equity.

*Schieffelin* v. *Komfort,* 163 App. Div. 741, affirmed.

(Argued October 1, 1914; decided October 23, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered August 27, 1914, which affirmed an order of Special Term denying a motion for an injunction *pendente lite.*

The following questions were certified to this court:

*First.* Is chapter 819 of the Laws of 1913, entitled "An Act to provide for submitting to the people the question, 'shall there be a convention to revise the Constitution and amend the same?' and to provide for such convention, if a majority of the electors shall decide that such convention be held," constitutional?

*Second.* Was the special election held under chapter 819 of the Laws of 1913, on the first Tuesday of April, 1914, a valid election?

*Third.* In calculating the total number of electors voting upon the question of holding a constitutional convention, submitted pursuant to section 2 of article XIV of the Constitution and chapter 819 of the Laws of 1913, and in determining whether a majority of the electors voting thereon have decided in favor of a convention, should the electors voting blank and void ballots, or either, be included?

*Fourth.* Has the Supreme Court of the state of New York jurisdiction in equity to grant to the plaintiff an injunction against the defendants as prayed for in the amended complaint herein?

*Fifth.* Does section 605 of the Code of Civil Procedure preclude the Supreme Court, sitting in the first judicial district, from issuing an injunction against the secretary of state for the relief prayed for in the amended complaint herein?

*Sixth.* Is section 605 of the Code of Civil Procedure constitutional in so far as it may be construed to preclude the Supreme Court sitting in a department other than that in which the secretary of state is located or is required to perform duties imposed upon him by the Election Law

from enjoining him as prayed for in the amended complaint herein ?

*Seventh.* Does the court have jurisdiction of the subject of the action ?

*Eighth.* Does the court have jurisdiction of the persons of the defendants ?

*Ninth.* Does the complaint state facts sufficient to constitute a cause of action ?

The facts, so far as material, are stated in the opinion.

*Louis Marshall, Mansfield Ferry* and *Albert S. Bard* for appellant. The plaintiff, as an elector and taxpayer, has the right to maintain this action, to restrain the holding of an election for delegates to the constitutional convention, because of the invalidity of the election held in April, 1914, and because of the fact that a majority of the lawful votes cast thereat did not decide the question submitted in the affirmative, there being no adequate remedy at law to determine the validity of the election. (*People* v. *Cook,* 8 N. Y. 67; *People ex rel. Stapleton* v. *Bell,* 119 N. Y. 175; *People ex rel. Noyes* v. *Board of Canvassers,* 126 N. Y. 392; *People ex rel. Sherwood* v. *Rice,* 129 N. Y. 391; *People ex rel. Derby* v. *Rice,* 129 N. Y. 461; *People ex rel. Calihan* v. *Hunt,* 75 App. Div. 33; *People ex rel. Kathan* v. *Board of Canvassers,* 75 App. Div. 110; Pom. Eq. Juris. 423, § 130; *Brown* v. *Smith,* 47 Ill. 482; *People ex rel. Wheaton* v. *Wiant,* 48 Ill. 263; *Dickey* v. *Reed,* 78 Ill. 261.) Although section 2 of article 14 and section 1 of article 6 of the New York Constitution do not in so many words confer a cause of action upon the plaintiff for the relief now sought, the necessary implication from those provisions is, that such a remedy exists in order to effectuate their plain intendment. (*Matter of Fraser* v. *Brown,* 203 N. Y. 136; *Matter of Hopper* v. *Britt,* 203 N. Y. 144.) The present suit may also be supported as a taxpayer's action under section 51 of the General Municipal Law. (*People ex rel. Bush* v.

*Houghton,* 182 N. Y. 301; 1 Dillon on Mun. Corp. [5th ed.] §§ 35–38, 109; *Maximilian* v. *Mayor, etc.,* 62 N. Y. 160.)

*James A. Parsons, Attorney-General* (*Joseph A. Kellogg* and *Elwood Rabenold* of counsel), for respondents. The Supreme Court of the state of New York has no jurisdiction in equity to grant to the plaintiff an injunction against the defendants as prayed for in the amended complaint herein. (*People ex rel. Hearst* v. *Woelper,* 183 N. Y. 274; *People ex rel. March* v. *Beane,* 188 N. Y. 266; *Matter of Metz* v. *Maddox,* 189 N. Y. 461; *People ex rel. Brink* v. *Way,* 179 N. Y. 174; *Hadley* v. *Mayor,* 33 N. Y. 603; *People ex rel. White* v. *Bd. of Suprs.,* 192 N. Y. 539; *Matter of Tamney* v. *Atkins,* 209 N. Y. 202; *People ex rel. May* v. *Strang,* 137 App. Div. 848; *Matter of Scofield* v. *Bd. of Aldermen,* 102 App. Div. 358; *Matter of Reynolds,* 202 N. Y. 430.)

*John Godfrey Saxe* as *amicus curiæ.* The certificate of the canvassers cannot be attacked in equity. (*Tappen* v. *Gray,* 9 Paige, 507; *People* v. *Draper,* 24 Barb. 265; *People ex rel. Corscadden* v. *Howe,* 177 N. Y. 499.) There is no authority for a taxpayer's action. (*Green* v. *Knox,* 175 N. Y. 432; *Matter of Reynolds,* 202 N. Y. 430; *Doolittle* v. *Supervisors,* 18 N. Y. 155; *Demarest* v. *Wickham,* 63 N. Y. 320; *People* v. *Kerr,* 20 How. Pr. 130.) The courts are without power to review the count made by the inspectors. (*People ex rel. May* v. *Strang,* 137 App. Div. 848.)

*J. Hampden Dougherty* as *amicus curiæ.*

CHASE, J. This action is brought by an individual against the persons constituting the board of elections and custodians of primary records in each of the sixty-two counties of the state, and against Mitchell May, as

secretary of state, for an injunction to restrain the boards of elections and the election officials of the state from taking steps preliminary to the nomination and election of delegates to a constitutional convention. In his complaint he alleges that he is a citizen, resident-elector and taxpayer of the city and county of New York.

An application was made in the action for an injunction *pendente lite*. That application was denied at Special Term, and the order denying such motion has been affirmed by the Appellate Division of the Supreme Court.

The Constitution provides (Art. XIV, § 2): "At the general election to be held in the year 1916, and every twentieth year thereafter, and also at such times as the legislature may by law provide, the question, ' shall there be a convention to revise the Constitution and amend the same ? ' shall be decided by the electors of the State; and in case a majority of the electors voting thereon shall decide in favor of a convention for such purpose, the electors of every senate district of the State, as then organized, shall elect three delegates at the next ensuing general election at which members of the assembly shall be chosen, and the electors of the State voting at the same election shall elect fifteen delegates at large. * * * Any proposed constitution or constitutional amendments which shall have been adopted by such convention, shall be submitted to a vote of the electors of the State at the time and in the manner provided by such convention, at an election which shall be held not less than six weeks after the adjournment of such convention. Upon the approval of such constitution or constitutional amendments, in the manner provided in the last preceding section, such constitution or constitutional amendments, shall go into effect on the first day of January next after such approval."

The legislature of the state in December, 1913, passed an act which became chapter 819 of the Laws of 1913, which provided:

"Section 1. A special election shall be held throughout the state on the first Tuesday in April, in the year nineteen hundred and fourteen, at which there shall be submitted to the electors of the state to be decided by them the question 'Shall there be a convention to revise the constitution and amend the same?' Every person qualified at that time to vote for members of the legislature may vote upon such question at the special election hereby appointed to be held. Such question shall be submitted in the manner provided by law for the submission of constitutional amendments. Such election shall be conducted by the same officers and in the same manner, and ballots, booths, and election supplies furnished therefor, as a special election called by the governor, except as otherwise provided herein. * * * Inspectors of election of the various election districts shall meet in their respective districts at the place designated therefor, on the second Saturday preceding such election, from eight o'clock in the forenoon.to ten o'clock in the evening, for the purpose of revising and correcting the register of voters in the manner provided by the election law for ascertaining electors qualified to vote at a special election. If a majority of the electors voting on such question are shown to have voted in the affirmative upon such question, as shall appear from the returns of county boards of canvassers to the state board of canvassers and by its canvass of such returns, such convention shall be held and shall be deemed duly called thereby, and delegates therefor shall be elected as provided in section two of article fourteen of the constitution."

Pursuant to said act a special election was held April 7th, 1914, and as appears from the returns of the county boards of canvassers to the state board of canvassers and by its canvass of such returns, a majority of the electors voting on the question "Shall there be a convention to revise the Constitution and amend the same?" voted in the affirmative.

The plaintiff alleges that the act of 1913 is unconstitutional and void: 1. Because it permits of a special election to answer said question without providing for the registration of voters to vote thereat as required by the Constitution. 2. That a majority of the electors voting on such question did not vote in the affirmative.

It plainly appears from the record that this action was brought upon the theory that the legislature had expressly provided therefor by the well-known taxpayers' acts. Section 1925 of the Code of Civil Procedure provides as follows: "An action to obtain a judgment, preventing waste of, or injury to, the estate, funds, or other property of a county, town, city or incorporated village of the state, may be maintained against any officer thereof, or any agent, commissioner, or other person, acting in its behalf, either by a citizen, resident therein, or by a corporation who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. This section does not affect any right of action in favor of a county, city, town, or incorporated village, or any public officer."

The General Municipal Law (Cons. Laws, ch. 24, § 51) provides as follows: "All officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation in this State, and each and every one of them, may be prosecuted, and an action may be maintained against them to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation by any person or corporation whose assessment, or by any number of persons or corporations, jointly, the sum of whose assessments shall amount to one thousand dollars, and who shall be liable to pay taxes on such assessment in the county, town,

village or municipal corporation to prevent the waste or injury of whose property the action is brought, or who have been assessed or paid taxes therein upon any assessment of the above named amount within one year previous to the commencement of any such action. * * * "
Under the statutes quoted a plaintiff to maintain an action is not bound to show that he has suffered or is in danger of suffering an injury that is personal and peculiar to himself. The right of action is given to one who has paid a tax within one year or is assessed and liable to pay a tax and he maintains it for the purposes provided by the statutes. The right rests upon the statute and not upon the interest of the plaintiff in the subject-matter in common with all other taxpayers.

That the action cannot be maintained against the defendants in this action under either statute has been conclusively determined by *Matter of Reynolds* (202 N. Y. 430). Several appeals were considered and they were all determined as stated in the opinion written under the general heading of *Matter of Reynolds*. In the second of the cases there considered a taxpayer had brought an action to enjoin the defendants, constituting the board of elections of the city of New York, from holding the primaries of the respective political parties and the general election in conformity with the apportionment act of 1907 upon the ground that the act was unconstitutional. The court held that an injunction was properly denied and answered in the negative a certified question which was as follows: "Can a taxpayer maintain an action to enjoin the board of elections of the city of New York from expending the moneys of said city necessary to hold a primary and general election for the year 1911 in the several senate and assembly districts in said city as organized under chapter 727, laws of 1907 on the ground that said chapter is unconstitutional?" The court say: "We are of the opinion that neither section 1925 of the Code, nor section 51 of the General Municipal

Law authorizes the maintenance of this action. The first statute provides that an action may be maintained 'to obtain a judgment, preventing waste of, or injury to, the estate, funds, or other property of a county, town, city or incorporated village of the state, * * * against any officer thereof, or any agent, commissioner, or other person, acting in its behalf.' The second statute provides 'All officers, agents, commissioners and other persons acting, or who have acted, for or on behalf of any county, town, village or municipal corporation in this state, and each and every one of them, may be prosecuted, and an action may be maintained against them to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation.' To bring the case within either statute the act sought to be enjoined should in some manner affect the estate, funds or property rights of the municipality. The Code provision expressly limits the action to that purpose. The Municipal Law authorizes the maintenance of an action to prevent 'any illegal official act on the part of any such officers, agents, commissioners or other persons.' But who are the officers whose illegal acts may be restrained ? Only those ' acting or who have acted for or on behalf of ' the municipal corporation. The defendants, the city board of elections, doubtless are local officers, but no relation of principal and agent, or of master and servant, exists between them and the city. (*Maxmilian v. Mayor, etc., of N. Y.*, 62 N. Y. 160; *Ham v. Mayor, etc., of N. Y.*, 70 id. 459; *N. Y. & Brooklyn Saw Mill & Lumber Co. v. City of Brooklyn*, 71 id. 580.) They did not act on behalf of the municipal corporation, but for the public in the control and direction of the machinery of the general elections of the state." (p. 440.)

The principle involved in the *Reynolds* case was unanimously approved in *County of Albany v. Hooker* (204

N. Y. 1), and in the concurring opinion it is said: "The taxpayers' act (originally Laws of 1872, chap. 161, now Code of Civil Procedure § 1925, and General Municipal Law, § 51), authorizes such actions against only municipal corporations and their officers, not against state officers. Hence an action to restrain the expenditure of state moneys on the highways mentioned in the complaint, if such expenditure is illegal, can be brought by the people of the state alone." (p. 19.)

There is no other statute expressly permitting an individual taxpayer to sustain an action to test the constitutionality of an act of the legislature without showing that his civil or property rights are specially and particularly affected and in which he demands and is entitled to relief based upon his rights.

The fact that the Constitution makes express provision for a review by the Supreme Court of an act of the legislature apportioning the state into districts, at the suit of any citizen, and refrains from providing for such a review in other cases, is of itself evidence that it was not the intention of the people by the Constitution to confer upon the judicial branch of government general authority at the suit of a citizen as such to sit in review of the acts of other branches of government.

The Constitution provides how future constitutional conventions can be called, but it does not provide that the courts, even when moved so to do by one of the body of citizens, shall supervise the action of the legislature or of the people and thus see to it that it or they obey its mandates in attempting to carry out its provisions.

It is claimed by the appellant that the action can be maintained to determine the constitutionality of the act of 1913, because of inherent power in the court to pass upon acts of the legislative branch of government. We are of the opinion that there is no inherent power in a court of equity to set aside a statute as unconstitu-

34

tional except in a controversy between litigants where it is sought to enforce rights or to enjoin, redress or punish wrongs affecting the individual life, liberty or property of one or more of the litigants. The court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected.

The rights to be affected must be personal as distinguished from the rights in common with the great body of people. Jurisdiction has never been directly conferred upon the courts to supervise the acts of other departments of government. The jurisdiction to declare an act of the legislature unconstitutional arises because it is the province and duty of the judicial department of government to declare the law in the determination of the individual rights of the parties.

The assumption of jurisdiction in any other case would be an interference by one department of government with another department of government when each is equally independent within the powers conferred upon it by the Constitution itself. (*Matter of Guden,* 171 N. Y. 529.)

Jurisdiction, being the power to hear and determine, is not given to the courts as guardians of the rights of the people generally against illegal acts of the executive or legislative branches of government. When a controversy arises between litigants, in which controversy the Constitution and an act of the legislature are each invoked and they are in conflict, it is necessary to follow the Constitution which is the supreme law, and ignore the act of the legislature, and thus incidentally and necessarily the courts pass upon an act of a co-ordinate and independent department of government.

That is the extent of the power of the judiciary over the legislative branch of government.

In *Marbury* v. *Madison* (1 Cranch, 137, 177) Chief Justice MARSHALL says: " It is emphatically the province

and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each. So if a law be in opposition to the constitution: if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregard. ing the law: the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty."

Justice GRAY in *In re Sawyer* (124 U. S. 200, 210) says: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property."

In *Green* v. *Mills* (69 Fed. Rep. 852) Circuit Justice FULLER, speaking for the Circuit Court of Appeals, says: "It is well settled that a court of chancery is conversant only with matters of property and the maintenance of civil rights. The court has no jurisdiction in matters of a political nature, nor to interfere with the duties of any department of government, unless under special circumstances, and when necessary to the protection of rights of property, nor in matters merely criminal, or merely immoral, which do not affect any right of property. (*In re Sawyer*, 124 U. S. 200; *Luther* v. *Borden*, 7 How. 1; *Mississippi* v. *Johnson*, 4 Wall. 475; *Georgia* v. *Stanton*, 6 Wall. 50; *Holmes* v. *Oldham*, 1 Hughes, 76, Fed. Cas. No. 6,643.) Neither the legislative nor the executive department, said Chief Justice CHASE, in *Mississippi* v. *Johnson*, 'can be restrained in its action by the judicial department, though the acts of both, when performed, are, in proper cases, subject to its cognizance.' 'The office and jurisdiction of a court of equity,' said Mr. Justice GRAY in *Re Sawyer*, 'unless enlarged by express statute, are limited to the protection of rights of property.'

## 532 SCHIEFFELIN v. KOMFORT.

To assume jurisdiction to control the exercise of political powers, or to protect the purely political rights of individuals, would be to invade the domain of other departments of governments or of the courts of common law.

" Similar views have been repeatedly expressed by state tribunals of high authority. Thus in *Fletcher* v. *Tuttle* (151 Ill. 41; 37 N. E. 683) the Supreme Court of Illinois say: ' The question then is, whether the assertion and protection of political rights, as judicial power is apportioned in this state between courts of law and courts of chancery, are a proper matter of chancery jurisdiction. We would not be understood as holding that political rights are not a matter of judicial solicitude and protection, and that the appropriate judicial tribunal will not, in proper cases, give them prompt and efficient protection, but we think they do not come within the proper cognizance of courts of equity.' "

More recently and in *Muskrat* v. *U. S.* (219 U. S. 346 357) the court say: " Whenever the claim of a party under the constitution, laws or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication. * * * Whenever, in pursuance of an honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any legislature, state or federal, and the decision necessarily rests on the competency of the legislature to so enact, the court must, in the exercise of its solemn duties, determine whether the act be constitutional or not; but such an exercise of power is the ultimate and supreme function of courts. It is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy between individuals. It never was the thought that, by means of a friendly suit, a party beaten in the

legislature could transfer to the courts an inquiry as to the constitutionality of the legislative act."

The clear weight of authority in this state is against the alleged power and authority of the courts to pass upon the constitutionality of a statute except in an action or proceeding in behalf of a person whose special, peculiar personal rights are affected thereby. The question was before the court and the authorities prior to that time considered in *Doolittle* v. *Supervisors of Broome Co.* (18 N. Y. 155). The purpose of that action was to have declared null and void an act of the board of supervisors of Broome county, which divided one of the towns of the county into three towns. The plaintiffs, seventeen in number, were residents and freeholders of the town divided and they brought the action in behalf of persons having an interest with them in the relief sought. The court in determining the action say that the question is of considerable practical importance which ought to be definitely settled, and after discussing the matter at length, together with analogous cases, concludes as correctly stated in the head note that the action cannot be maintained by persons having no other interest than one common to all the freeholders of the proposed towns and that the proceedings of the board of supervisors if void can only be redressed or prevented at the suit of the state or some other officer authorized to act in behalf of the public and that a private person cannot bring the action in question unless it involves some peculiar damage to his individual interest.

In *Roosevelt* v. *Draper* (23 N. Y. 318, 323) the plaintiff, who alleged that he was a resident and taxpayer of the city of New York, owning real and personal property situated therein and paying taxes thereon, and also as a creditor of the city by reason of being the owner and holder of a portion of the city stock, brought the action to have declared void and to set aside conveyances which it was alleged had been illegally made by the corporation of the

city of New York of a piece of land under the waters of the North river. The court say: "As a resident citizen, and a person liable to be taxed, he has no other rights than such as are common to all of the people of that community who own property; and we have decided upon full consideration that it requires some individual interest, distinct from that which belongs to every inhabitant of the town or county, to give the party complaining a standing in court, where it is an alleged delinquency in the administration of public affairs which is called in question. (*Doolittle* v. *Supervisors of Broome Co.*, 18 N. Y. 155.) The fact of owning taxable property is not such a peculiarity as to take the case out of the rule, for all property, with very limited exceptions, is taxable, and everybody either has, or is capable of acquiring property. Liability to contribute to the public burdens, where there are no privileged classes, is the lot of every member of the state, and a large proportion of all the acts of government, either general or local, involves questions of expenditure, and affects more or less the subject of taxation. If a plaintiff has taxable property at the time he commences his action, he may not have it when the next assessment for purposes of taxation is made; and if he have none when the act complained of is committed, he may be a large taxpayer when that act produces its result in increased taxation   The actual liability of the plaintiff to injury consists in his belonging to a community in which every person is subject to pay taxes on all he possesses. An act of administration likely to produce taxation is not, therefore, a matter of private or individual concern."

This court in *People* v. *Canal Board* (55 N. Y. 390, 394), which was an action brought by the attorney-general in behalf of the people, say: " A court of equity has, as such, no supervisory power or jurisdiction over public officials or public bodies, and only takes cognizance of actions against or concerning them when a case is made com-

ing within one of the acknowledged heads of equity jurisdiction."

After numerous decisions of the court in which the *Doolittle* and *Roosevelt* cases are the most notable examples, the taxpayers' act of 1872 was passed to provide a remedy against the wrongful acts of officers and agents of municipal corporations. It is significant that although the act has been many times considered in the last forty years by the legislature as well as by the courts, it has not been extended to include the wrongful acts of officers and agents of the state.

In the recent case of *Matter of Tamney* v. *Atkins* (209 N. Y. 202, 206) the court say: "It is well settled that this proceeding [mandamus to require the recount of rejected ballots] may not be entertained by virtue of any inherent powers of the court, but must find authorization and support in the express provisions of the statute. * * * It is not difficult to appreciate the force of the argument made in behalf of the relator that there is no justice or logic in permitting a candidate for some inconsequential office to sue out such a writ as this and then to withhold such right from a person like the relator in the case of an election which may involve very substantial rights and interests for him. But this argument must be addressed to the legislature rather than to the courts. As has already been said, in such a case as this the right to the writ depends on legislative enactment, and if the legislature as the result of fixed policy or inadvertent omission fails to give such privilege, we have no power to supply the omission."

It is the settled law in this state that equity has no jurisdiction over contests for office even if the election is claimed to be void. Parties aggrieved are required to assert their rights in proceedings provided by statute or in actions at law. (*Matter of Hearst* v. *Woelper*, 183 N. Y. 274; *Matter of Metz* v. *Maddox*, 189 N. Y. 460; *People ex rel. Brink* v. *Way*, 179 N. Y. 174; *Matter of*

*Reynolds,* 202 N. Y. 430, 441; *People ex rel. Corscadden* v. *Haswell,* 177 N. Y. 499; *Bachman* v. *Harrington,* 184 N. Y. 458; *In re Sawyer,* 124 U. S. 200.)

The plaintiff as an individual cannot sustain this action to determine the result of the election at which the question was submitted as to whether a constitutional convention should be held. It will not do to say that the courts should assert jurisdiction in cases of this kind to avoid public expense or prevent a wrong for which there is no other immediate remedy. Such a contingency should be provided against by the legislature or by the people in the Constitution.

The cases in this state where expressions are used that are claimed by the appellant to sustain his position are in actions at law or in proceedings such as applications for mandamus to compel a public officer to discharge a plain public duty, or they are otherwise explainable. It is *asserted by the appellant that the case of Rathbone* v. *Wirth* (150 N. Y. 459) *involves precisely the same principle contended for by him in this case.* That action was brought under the taxpayers' act. In the opinion written at the Special Term (Court of Appeals Records, volume 44, 1896) the court say: "We are thus brought to the consideration of the further point made by the defendants that the plaintiffs as taxpayers cannot maintain this action. *That they could not in the absence of a statutory provision expressly authorizing it is clear.* Indeed prior to the enactment of chapter 161 of the Laws of 1872 it was repeatedly held that a taxpayer in his character as such, whose position was not different from that of the whole body of taxpayers, has no such interest as would entitle him to resort to a court of equity to revise, restrain, or set aside the action of town or municipal authorities upon an allegation that their acts were unauthorized and illegal or that unless arrested they would subject the plaintiff to unjust or illegal taxation."

The questions involved have been considered in many

of the other states of the Union and the decisions are not uniform. A consideration of such decisions in this opinion would require elaborate statements to show the particular constitutional provisions and statutes on which they are based as well as the tendency in some states to assert jurisdiction in the courts to review the acts of independent branches of government.

This court has not refrained and will not refrain from declaring a statute unconstitutional when it is asserted in a controversy where the question becomes a judicial one, but we repeat that the courts of this state have denied the right of a citizen and taxpayer to bring before the court for review the acts of another department of government simply because he is one of many such citizens and taxpayers.

Our conclusion, as stated, makes it unnecessary to consider any of the other questions presented on this appeal. But nothing contained in this opinion should be construed as an intimation that if the court had jurisdiction of the subject of the action it would deem the statute in question or the special election held thereunder to be invalid.

The order should be affirmed, with costs. The fourth question should be answered in the negative and the other questions should not be answered.

WERNER, HISCOCK, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur.

Order affirmed.