MILDRED R. SMITH, Plaintiff, *v.* CITY OF BUFFALO et al.,
Defendants.

Supreme Court, Special Term, Erie County, March 30, 1948.

*Michael J. Montesano* for plaintiff.

*Fred C. Maloney, Corporation Counsel (Manley B. Tillou* of counsel), for defendants.

WARD, J. This action is brought by an individual taxpayer in accordance with the provisions of section 51 of the General Municipal Law and against the persons above named in their corporate and official capacities, for an injunction restraining them from destroying property described in an attached amended complaint, to wit, five slot machines, and restraining them from enforcing an order of destruction granted by the Hon. JOHN L. KELLY attached to the amended complaint, and directing them to return the property to the premises from which seized or post security for its safe return in lieu thereof.

The matter comes before the Special Term of Erie County by way of an order to show cause granted by the Hon. LEO J. HAGERTY. The order contains a stay directing the defendants, their agents and employees, to refrain '' from committing or suffering to be committed any of said acts relative only to destruction of said property until the decision of the Court granting or refusing the said injunction.''

The plaintiff in her amended complaint alleges that she is a citizen, resident real property owner in the city of Buffalo of value upwards of $1,000; that for more than one year past she has paid taxes to the City of Buffalo on said property; that the city is a municipal corporation; that the defendant, Bernard J. Dowd is the Mayor of Buffalo; that the defendant, Thomas J. McMahon is the Commissioner of Police of the City of Buffalo.

The plaintiff further alleges upon information and belief, '' that the defendant, Thomas J. McMahon, as such Commissioner of Police, and various of his subordinates acting in his or their capacities as police and peace officers, agents, employees and officials of said City have heretofore, and in the future, threaten to seize from various citizens and places in said City machines, devices and apparatus, and have destroyed many of said machines, devices and apparatus heretofore seized, and have threatened to continue to seize and destroy such other machines hereafter seized by them ''; and further alleges, upon information and belief, '' that on or about the 24th day of February, 1948, said Commissioner of Police, acting through his subordinates, police officers and employees of the City of Buffalo, seized certain machines and apparatus from premises known as No. 294–296 Glenwood Avenue, Buffalo, New York, who are

now in control, custody and possession of said machines more particularly described in an order signed by Hon. JOHN L. KELLY, one of the Judges of the City Court of Buffalo directing said police officers to destroy said machines, which said order is hereto annexed and made part hereof, as if fully set forth herein "; and continues: " Upon information and belief that said Commissioner of Police is about to execute the order of said Judge of the City Court and completely destroy and demolish said machines and others now or hereafter seized by him in the same manner as various other machines heretofore seized."

The plaintiff (henceforth so-called) further alleges that the defendant McMahon and his subordinate officers " are purportedly acting under color of authority granted to them by virtue of Chapter 543, Section 1 of the Laws of 1928, as amended by the Laws of 1934, Chapter 317, Section 1, effective May 7, 1934, of the Laws of New York State, commonly known as Sections 982–983–984–985 of Article 88 of the Penal Law of the State of New York."

By paragraph twelfth of the amended complaint, plaintiff alleges that these sections of the Penal Law are " void, invalid, contrary to and in contravention of the constitutions of the State of New York and of the United States and are of no force and effect in that, " among other things, said laws deprive the owners and those persons in possession of said devices and machines of their liberty and property without due process of law in violation of Article 1, Section 6 of the Constitution of the State of New York; and Section 1 of Amendment XIV and Amendment V of the Constitution of the United States of America; in that they attempt to destroy property rights vested, acquired and legally existing prior to the enactment of said Sections 982, 983, 984 and 985 as amended by the Laws of 1934; in that said law and the enforcement thereof are discriminatory and confiscatory and applicable only to certain classes of citizens and property, limited and restricted in their application to only certain persons and property in said class and violative of the heretofore mentioned amendments of the Constitution of the United States of America and of the Constitution of the State of New York in force and effect prior to and at the time of the enactment of the aforesaid illegal, void and invalid sections of the so-called Penal Law of the State of New York."

In the next paragraph the plaintiff claims that if these slot machines are destroyed as provided for in section 984 of the Penal Law and as directed by the order of the Hon. JOHN L.

KELLY, Associate Judge of the City Court of Buffalo, such destruction "will render the City of Buffalo liable for money damages to the various owners or others asserting an interest, right or claim of ownership or possession of said machines and the contents thereof, which said claim or claims are payable from the funds held by the treasury of the City of Buffalo and collected in part from the plaintiff and other citizens and taxpayers of said City, and in consequence thereof the plaintiff herein and others similarly situated will be required to contribute in whole or in part in the payment of said claim or claims to their irreparable damage" and that a waste and injury would result to the property, funds and estate of the City of Buffalo.

Plaintiff alleges that she has no adequate remedy at law for the relief demanded and prays for a judgment adjudging and determining:

"1. That said Sections 982 to and inclusive of 985 of the Penal Law of the State of New York as amended by the Laws of 1934, are illegal, invalid and void and of no effect and in violation of the Constitutions of the State of New York and of the United States.

"2. That the said defendants and each of them were and are without power and authority to destroy the machines, apparatus and devices now in their custody and possession as set forth in said complaint, and that the destruction of the machines, devices and apparatus heretofore seized and so destroyed by the defendants or any of them as set forth herein, were and are illegal acts and a waste and injury of the money, property, funds and estate of said City of Buffalo.

"3. That the defendant, City of Buffalo, and the defendant, Bernard J. Dowd, as Mayor of the City of Buffalo, and Thomas J. McMahon, as Commissioner of Police of the City of Buffalo, its and their subordinates, agents and employees, are restrained and perpetually enjoined from destroying the machines, devices and apparatus now in their custody, control and possession and referred to in said complaint, seized by them or any of them under color of authority of the sections of the Penal Law above set forth.

"4. And for such other, different and further relief in the premises as to the court may seem just, equitable and proper.

"5. And for the costs of this action."

Thus the motion presently before the court is an application for an injunction *pendente lite*. A determination of this motion

is dependent upon the cause of action set forth in the amended complaint and the ultimate relief sought by the plaintiff. It has, therefore, been necessary to set forth in detail considerable portions of the amended complaint, together with the plaintiff's prayer for relief therein. It is apparent therefrom that the plaintiff seeks to invoke the equity side of the Supreme Court by virtue of the provisions of section 51 of the General Municipal Law (L. 1881, ch. 531, as amd.), the pertinent portion of which reads as follows: " All officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation in this state, and each and every one of them, may be prosecuted, and an action may be maintained against them to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation by any person or corporation whose assessment, or by any number of persons or corporations, jointly, the sum of whose assessments shall amount to one thousand dollars, and who shall be liable to pay taxes on such assessment in the county, town, village or municipal corporation to prevent the waste or injury of whose property the action is brought, or who have been assessed or paid taxes therein upon any assessment of the above-named amount within one year previous to the commencement of any such action."

As the court understands the contention of the plaintiff, sections 982 through 985 of the Penal Law inclusive, are unconstitutional, both as to the Constitution of the United States and the Constitution of the State of New York, and that if they be so, the destruction of these slot machines will be an illegal act permitting the undisclosed owners thereof to bring an action for damages against the City of Buffalo, and upon a recovery therein and execution thereon, depleting the treasury of the city to the extent of the judgment and costs. Thus the plaintiff seeks to prevent waste of the funds of the municipality by the illegal act of the defendants or their agents.

Two questions immediately present themselves to this court for determination:

(1) Has the Supreme Court of the State of New York jurisdiction in equity to grant to the plaintiff an injunction against the defendants as prayed for in the amended complaint herein?

(2) Are sections 982, 983, 984 and 985 of the Penal Law void, invalid, contrary to and in contravention of the Constitutions of the State of New York and of the United States?

A negative finding as to either of these questions disposes of the other for if the Supreme Court is without jurisdiction in equity to grant the plaintiff an injunction, the question of the constitutionality of the statutes need not be determined. On the other hand, if the statutes are constitutional, then the threatened acts of the defendants are not illegal and the plaintiff is entitled to no relief under the provisions of section 51 of the General Municipal Law.

The plaintiff makes no claim of ownership or interest in these slot machines or that she has any interest in this proceeding other than as a taxpayer anxious to prevent waste which might result to the corporate funds of the municipality of the City of Buffalo by the claimed illegal official acts of its officers, agents, commissioners and other persons acting or who have acted for and in behalf of the municipal corporation.

Judge POUND in *People* v. *Beakes Dairy Co.* (222 N. Y. 416, 426) said: "We are asked, however, to pass upon the constitutionality of the Statute. Courts often say that they will withhold a decision on the constitutionality of a statute until it becomes unavoidable for the determination of the case [citing case], but it seems like an anti-climax to the careful presentation of this appeal on constitutional grounds to dispose of it temporarily as a mere matter of the wording of the complaint."

It has always seemed to me that a trial court should be most hesitant to pass upon the constitutionality of an act of the Legislature unless the matter is squarely presented on that ground alone. Judge POUND was speaking for the Court of Appeals. The essence of the action was the constitutionality of an act of the Legislature and the court did not see fit to send the appellant back to reword his complaint.

That is not the situation here. The first question outlined above goes to the very jurisdiction of the equity side of the Supreme Court in this State.

As has been pointed out, the plaintiff is proceeding under section 51 of the General Municipal Law (quoted above). Judge CHASE, writing for the court, in an opinion concurred in by the whole court in the case of *Schieffelin* v. *Komfort* (212 N. Y. 520, 527), referring to section 1925 of the Code of Civil Procedure and section 51 of the General Municipal Law, said: "Under the statutes quoted a plaintiff to maintain an action is not bound to show that he has suffered or is in danger of suffering an injury that is personal and peculiar to himself. The right of action is given to one who has paid a tax within one year or is assessed and liable to pay a tax and he maintains it for the purposes

provided by the statutes. The right rests upon the statute and not upon the interest of the plaintiff in the subject-matter in common with all other taxpayers." It must be clearly borne in mind that this statement applies only when the illegal official act is contrary to existing enactments and not when the plaintiff seeks, by way of these statutes, to have a court of equity declare the invalidity of the enactment. This will be discussed more fully below.

In the *Schieffelin* case (*supra*), the court discussed in great detail the requisites necessary to the plaintiff in order to bring such an action and upon the authority of *Matter of Reynolds* (202 N. Y. 430) and cases cited therein, decided that the officers sought to be enjoined were not those described in the statutes (Code Civ. Pro., § 1925; General Municipal Law, § 51). The court, however, found it necessary in arriving at its conclusion to report and discuss at length the jurisdiction of a court of equity to grant relief to a taxpayer proceeding under these statutes when the plaintiff sought to test the constitutionality of an act of the Legislature. At page 529 the court said:

" There is no other statute expressly permitting an individual taxpayer to sustain an action to test the constitutionality of an act of the legislature without showing that his civil or property rights are specially and particularly affected and in which he demands and is entitled to relief based upon his rights.

" The fact that the Constitution makes express provision for a review by the Supreme Court of an act of the legislature apportioning the state into districts, at the suit of any citizen, and refrains from providing for such a review in other cases, is of itself evidence that it was not the intention of the people by the Constitution to confer upon the judicial branch of government general authority *at the suit of a citizen as such* to sit in review of the acts of other branches of government." (Italics mine.)

In the same case, the plaintiff claimed that the action could be maintained to determine the constitutionality of the act in question because of the inherent power in the court to pass upon acts of the legislative branch of the government. The court said (pp. 529–530):

" We are of the opinion that there is no inherent power in a court of equity to set aside a statute as unconstitutional except in a controversy between litigants where it is sought to enforce rights or to enjoin, redress or punish wrongs affecting the individual life, liberty or property of one or more of the litigants. The court has no inherent power to right a wrong unless thereby

the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected.

"The rights to be affected must be personal as distinguished from the rights in common with the great body of people." This language is cited with approval and followed in *People ex rel. Schneider* v. *Prendergast* (172 App. Div. 215).

In support of this determination and that a contrary holding would infringe the separation of the powers and functions of the separate departments of government are such judicial landmarks as *Marbury* v. *Madison* (1 Cranch [U. S.] 137, 177) by Chief Justice JOHN MARSHALL, *Matter of Sawyer* (124 U. S. 200, 210), *Green* v. *Mills* (69 F. 852) and the cases cited therein.

More recently in *Muskrat* v. *United States* (219 U. S. 346, 359), the court, speaking of the power of a court of equity to determine the constitutionality of a statute, said: "'It is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy between individuals.'"

Returning again to the *Schieffelin* case (*supra*), the court said at page 537: "This court has not refrained and will not refrain from declaring a statute unconstitutional when it is asserted in a controversy where the question becomes a judicial one, but we repeat that the courts of this state have denied the right of a citizen and taxpayer to bring before the court for review the acts of another department of government simply because he is one of many such citizens and taxpayers."

In the most recent decision of the Appellate Division of the Third Department of this State in the case of *Bull* v. *Stichman* (273 App. Div. 311), opinion by the Hon. MARTIN W. DEYO, concurred in by all except the Hon. JAMES P. HILL, the opinion of the majority followed and cited with approval the rule in the *Schieffelin* case (212 N. Y. 520, 533, *supra*), quoting as follows from that case: "The clear weight of authority in this state is against the alleged power and authority of the courts to pass upon the constitutionality of a statute except in an action or proceeding in behalf of a person whose special, peculiar personal rights are affected thereby." In this case, the majority opinion reviews those cases apparently following the opposite view and points out that in those cases, the matter was of such urgency and of such transcending public importance as not to permit of delay or justify the court in overly concerning itself with exact procedure (*Heim* v. *McCall*, 88 Misc. 291, revd. 165 App. Div. 449, revd. and Special Term affd. 214 N. Y. 629, affd. 239 U. S. 175; *Matter of Kuhn* v. *Curran*, 294 N. Y. 207).

There is no urgency in this matter. The statutes under question by the plaintiff have been upon the statute books of this

State in nearly their present form for almost fifty years and last amended in 1934. This is no matter of transcending public importance. The rule enunciated by both the Federal and the State courts from the time of Chief Justice JOHN MARSHALL to the latest decision on the question of a week ago (*Bull* v. *Stichman, supra*) is sound law and is the law of this State.

I, therefore, determine that the Supreme Court of the State of New York has no jurisdiction in equity to grant to the plaintiff an injunction against the defendants as prayed for in the amended complaint herein.

It occurs to this court that there is at least a further reason not set forth in the cases determining this rule. Many and ancient are the axioms of equity used by a court of equity in arriving at its decisions. These axioms apply to the litigants directly before the court. Real and immediate civil, personal or property rights should be involved between the litigants so that the court might truly balance the equities, examine the conduct of the parties and particularly determine if the plaintiff comes before the court with clean hands. The instant case is a good example. Here the plaintiff claims she seeks to prevent waste. Yet in the second paragraph of her prayer for relief, she asks this court to decree that all slot machines heretofore destroyed by the defendants or their agents were destroyed unlawfully and illegally. She thereby seeks to lay the foundation for a flood of litigation against the municipality and cause a waste of the corporate funds of the City of Buffalo immeasurably greater than any loss that might result from the destruction of the five machines in question. She escapes the "unclean hands doctrine" by her disavowal of any interest in the machines. Nowhere in this proceeding have the names of the true owners of these machines appeared. They may be persons of the highest standing in the community but in effect they are hiding behind the skirts of this plaintiff rather than disclosing their identity and association with conduct declared by the statutes involved to be criminal. Behind them lurk individuals whose unlawful use and ownership of slot machines has prostituted and brought discredit to otherwise honorable and estimable clubs and organizations.

These owners might well bring a similar proceeding on their own behalf, thereby avoiding the rule in the *Schieffelin* case (*supra*). They then would have a direct property right involved and a court of equity could pass directly to the constitutional question. To do so, of course, would expose them to arrest and prosecution and subject them to the axioms of equity. If their hands are unclean, a court of equity might well leave them

where it found them, denying them any equitable relief and leave them to their action at law either for damages resulting from the destruction of their property or expose them to prosecution for a crime.

A court of equity ought not permit itself to be used as a forum wherein persons engaged in activities contrary to law may use a "front" in an effort to protect their contraband property and in an effort to permit themselves to continue their unlawful activities secure in the half-light of anonymity.

My conclusion, as stated, makes it unnecessary to consider the other question presented on this motion, but nothing contained in this opinion should be construed as an intimation that if this court of equity had jurisdiction of the subject of the action in this motion, it would deem the statutes in question to be invalid.

The motion is hereby denied, with costs to the respondents in the amount of $10. The stay granted by the Hon. Leo J. Hagerty is hereby vacated and set aside. Prepare order.