■ In the Matter of RICHARD STACK, Respondent, v LISA M. FISHER, as Candidate for the Office of Justice of the Supreme Court for the Third Judicial District, et al., Appellants, et al., Respondent. [995 NYS2d 265]—

Per Curiam. Appeal from a judgment of the Supreme Court (Ceresia, J.), entered October 7, 2014 in Albany County, which, among other things, granted petitioner's application, in a proceeding pursuant to Election Law § 16-102, to declare invalid the certificate of nomination naming respondent Lisa M. Fisher as the Conservative Party candidate for the public office of Justice of the Supreme Court for the Third Judicial District in the November 4, 2014 general election.

Petitioner is an enrolled Conservative Party member and served as a delegate to the Conservative Party judicial nominating convention for the Third Judicial District that was held on September 20, 2014. The delegates rejected petitioner's bid to become temporary and permanent chair of the convention and proceeded to nominate an individual that he did not support, respondent Lisa M. Fisher, as the Conservative Party candidate for the public office of Justice of the Supreme Court for the Third Judicial District in the November 4, 2014 general election. Petitioner responded by filing general and specific objections to the certificate of nomination with respondent State Board of Elections, and commenced the present proceeding seeking to have Fisher's nomination declared invalid. Supreme Court denied the motion of Fisher and respondents Edward J. Gaddy, Michael Buttino and Michael R. Long (hereinafter collectively referred to as respondents) to dismiss the petition on various grounds, then granted the petition in its entirety. Respondents now appeal, and we reverse.

We initially conclude that Supreme Court properly denied respondents' motion to dismiss the petition. Petitioner seeks to invalidate a nomination under the Election Law and, contrary to respondents' contention, his claim accrued when the convention occurred (see Election Law § 16-102 [2]; Matter of Scaringe v Ackerman, 119 AD2d 327, 328-329 [1986], affd for reasons

*stated below* 68 NY2d 885 [1986]).* Petitioner therefore timely commenced this proceeding "within [10] days after the holding of [the] convention" (Election Law § 16-102 [2]; *see e.g. Matter of Kosowski v Donovan*, 18 NY3d 686, 688-689 [2012]). Respondents further contend that petitioner is barred by the doctrine of unclean hands from disputing the validity of the judicial nominating convention. Even if the equitable defense of unclean hands is available in an election proceeding (*but see Schieffelin v Komfort*, 212 NY 520, 535 [1914]), we are not persuaded that it applies here. Petitioner did not create the alleged problems with the composition of the convention—indeed, he complained of the delegate makeup during the convention itself—and we do not perceive any unconscionable conduct on his part that was directly related to the subject matter of this proceeding and caused harm to respondents (*see National Distillers & Chem. Corp. v Seyopp Corp.*, 17 NY2d 12, 15-16 [1966]).

We part ways with Supreme Court, however, in regard to the merits of the petition. Election Law § 6-124 provides, in relevant part, that the number of delegates at a judicial convention "shall be determined by party rules, but the number of delegates shall be substantially in accordance with the ratio, which the number of votes cast for the party candidate for the office of governor, on the line or column of the party at the last preceding election for such office, in any unit of representation, bears to the total vote cast at such election for such candidate on such line or column in the entire state." The Conservative Party rule addressing the selection of delegates and alternate delegates for its Judicial Nominating Convention for the Third Judicial District provides for "the election of one delegate and one alternate delegate for each two thousand [2000] votes or major fraction thereof cast in such [A]ssembly [D]istrict or portion" on the Conservative Party line in the previous gubernatorial election (Rules and Regulations of the Conservative Party of New York State, art VIII, § 1). Redistricting altered the contours of the Assembly Districts after the 2010 gubernatorial election (*see* L 2012, ch 16, 20), and the record reflects that the Conservative Party adjusted the results to account for the new district boundaries (*see* Rules and Regulations of the Conservative Party of New York State, art VIII, § 1). The rules were applied here and resulted in a total of 13 delegates for the 11 Assembly Districts that lie entirely or partially within the Third

---

* Respondents also assert that petitioner lacked standing to commence the present proceeding but, to the extent that this argument is properly before us, it is without merit (*see* Election Law § 16-102 [1]).

Judicial District, with 10 delegates from eight Assembly Districts having ultimately been elected.

Petitioner argued, but failed to establish, that the districts with the lowest vote totals were so overrepresented at the convention that "the statutory requirement of substantial proportionality" was not satisfied (*Matter of Azria v Salerno*, 68 NY2d 887, 889 [1986]). Delegates were not elected from the 101st, 104th and 106th Assembly Districts but, because those districts only encompassed approximately 10% of the total votes cast in the Third Judicial District, we are satisfied that "the number of delegates elected substantially complies with proportional representation" (*Matter of Bruno v New York State Bd. of Elections*, 208 AD2d 877, 878 [1994]; *see Matter of Consuello v McGrath*, 21 Misc 3d 1112[A], 2008 NY Slip Op 52057[U] [Sup Ct, Albany County 2008], *affd for reasons stated below* 55 AD3d 1453 [2008], *lv denied* 11 NY3d 709 [2008]). Turning to the proportionality of voting power among the elected delegates, two delegates each were returned from the 102nd and 107th Assembly Districts, which represent 7,014 votes or 40% of the total cast. One delegate was elected from each of the 103rd and 109th Assembly Districts, representing 4,653 votes or approximately 26% of the total cast. One delegate each was returned from the 100th, 108th, 110th and 111th Assembly Districts, representing 4,209 votes or approximately 24% of the total. The smaller districts were undoubtedly overrepresented at the convention, as 40% of elected delegates represented only 24% of the Conservative Party votes cast in the Third Judicial District. It is equally evident, however, that the two largest districts represented 40% of voters and had 40% of the elected delegates (*cf. Matter of Snell v Young*, 88 AD3d 1149, 1151-1152 [2011], *lv denied* 17 NY3d 715 [2011] [almost 60% of voters represented by 30% of elected delegates]). The 103rd and 109th Assembly Districts were likewise not significantly underrepresented, with 20% of the elected delegates representing 26% of the voters. Election Law § 6-124 "does not require strict compliance" with the requirement of proportional representation; the test, rather, is whether the districts "were properly represented in proportion to their voting strength" (*Matter of Azria v Salerno*, 68 NY2d at 889). Substantial compliance is the touchstone of the statute and, under the circumstances present here, we find that goal to have been met (*see id.*; *Matter of Diamond v DeJoseph*, 121 AD3d 1283 [2014] [decided herewith]).

Lahtinen, J.P., Garry, Lynch and Devine, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and it is declared that the certificate of nomination naming respon-

dent Lisa M. Fisher as the Conservative Party candidate for the public office of Justice of the Supreme Court for the Third Judicial District in the November 4, 2014 general election is valid.