-Clare J. Hoyt, J.
Plaintiff School District commenced this action on May 17, 1962, for an injunction against the County of Westchester, to forever enjoin and restrain it from constructing, operating and maintaining upon property owned by it in the Town of Cortlandt, Westchester County, in a preserve known as Blue Mountain Reservation, a Sportsmen’s Center. The Sportsmen’s Center would consist of a shooting center with pistol, large and small bore rifle ranges, trap and skeet shooting ranges, archery ranges and bait and casting ponds.
On May 28, 1962, plaintiff moved for a temporary injunction. Special Term denied the motion holding that the issue could not be disposed of summarily. Recognizing the rights of the parties, however, to a speedy determination, Special Term set the matter down for trial before this court on June 15, 1962 at .which time the trial commenced and proceeded for some five days.. At the conclusion of the trial, the court, with the consent of and in the presence of the.parties, inspected the site of the controversy. .
Defendant acquired Blue Mountain. Reservation, containing some 1,500 acres, .upwards.of 30 years ago. Up to the present, very little has been done .to change its natural state. It is heavily wooded and-quite hilly. Watch Hill Road runs in a generally east-west direction along its southerly boundary. The property has been used heretofore for hiking, camping, picnicking, and *796 horseback riding and has been under the control of defendant’s Board of Parks, Recreation and Conservation.'
For many .years the county has investigated and considered the erection and maintenance of a shooting center within its park system. Sportsmen, through, their clubs and councils, have sought such a facility. Blue Mountain Reservation has been considered as a possible location therefor since 1955. In 195.7 the Westchester County Executive appointed a Sportsmen’s Advisory Committee consisting of county officials and representatives of sportsmen’s groups to consider the need, appropriateness, feasibility and site locations for a shooting center. In June of 1960 the committee rendered its report to the Westchester County Executive and in August of 1961 the Board of Parks, Recreation and Conservation approved plans for the Sportsmen’s Center in Blue Mountain Reservation. Plans were prepared, submitted to the Capital Projects Committee of defendant’s Board of Supervisors and .an item of $250,000 therefor was placed in defendant’s budget. A budget hearing was held in December of 1961 and the budget, including this item, was approved in January, 1962. The range site was tentatively staked out in March, 1961, and staked out again with some certainty in January, 1962. Two contracts, aggregating around $26,000 were let in April and May of 1962 for blasting, cleaning of the range sites and the preliminary work.
This chronology of events has been set forth with particularity because the plaintiff claims, and nothing in the record disproves it, strange as it may seem, that it had no knowledge of the defendant’s plans for the shooting center when plaintiff purchased in March of 1962 some 28 acres of land adjacent to Blue Mountain Reservation for the erection of an elementary school.
Plaintiff, in the Summer of 1961, looked at several sites within its district as a location for an elementary school to be erected when anticipated future needs required it. In November of 1961 an architect for the State Department of Education examined the proposed school site and recommended its purchase. He did not know of the plans for the shooting center. The plaintiff in November of 1961 secured a four-month option to purchase the land. Two district meetings were held and a vote in February of 1962 favored the purchase of the site. The plaintiff at once exercised its option, secured title in March of 1962 and in April of 1962- learned of the proposed shooting center. It thereupon commenced this action claiming that the dangers "inherent in and the noises emanating from the shooting center would constitute a nuisance, would make it impossible for plaintiff to proceed with the erection of a school on its site and that such use by the *797 defendant would be .unreasonable, and that the loss to the plaintiff would be irreparable.
Although the determination herein is not dependent on plaintiff’s knowledge of defendant’s plans, the court finds there was no such knowledge. Nevertheless, defendant cannot be charged with planning the shooting center without normal publicity. Articles appearing in 1957 and 1958 in The Evening Star, a daily paper of general circulation within the school district, mentioned the possibility of a shooting center in Blue Mountain Reservation. In an article in January, 1962, the selection of Blue Mountain Reservation as the shooting site was reported.
The defendant established by several well-qualified witnesses that the site chosen is well situated topographically for a shooting center. These witnesses further established that the ranges were so oriented, separated from each other and with hills or rises in the target area to cause no danger or threat of injury to anyone on plaintiff’s property. The only ranges that point in the direction of plaintiff’s property are the skeet and trap shooting ranges. They are 1,650 feet from plaintiff’s lands which is over twice the carrying power of any shots from the ranges. The plaintiff failed to establish that shots fired from the ranges would land on the plaintiff’s property so as to constitute any danger to persons on plaintiff’s property.
Plaintiff’s proof was devoted principally to the noise that would emanate from the shooting. True, when the center is in operation there may be heavy firing from the 10 stations in the pistol range, the 20 stations in the large bore rifle range, the 10 stations in the small bore rifle range, and the 4 skeet and trap ranges. The plaintiff was permitted to reproduce in the courtroom sounds of gun fire emanating from a range at Kenilworth, New Jersey, which range was established to be comparable to the one contemplated on defendant’s property. Child psychologists testified that the noises from gun discharges are impulsive, sporadic, with steep wave fronts and rapid onsets, and that such noises would divert the attention of the pupils, cause distraction and emotional tensions and interfere with the learning ability of the pupils and the ability of their instructors to teach.
These effects, however, were predicated upon the reception of sound on the boundary of the school land contiguous to defendant’s land, a point about 1,650 feet.from the nearest rapgc, the trap and skeet range, ' The plaintiff’s lands extend on for at least another 1,650 feet in an easterly direction still farther away from the ranges. The plaintiff has formulated no plans as to where on its parcel it will build its school and no allowance has been made for the reduction of the sound that will result from *798 the pupils and teachers being within a building and being at a greater distance from the shooting ranges.
Upon the foregoing facts, plaintiff’s application for injunction is denied. As previously pointed out, there is no factor of danger for the court to consider. The sole remaining complaint is that of noise. There has been and can be at this time no proof as to the extent of the noise that might be heard by pupils in a school that plaintiff may erect on its land at a location now unknown.
The court has no way of knowing whether the noise will be offensive should plaintiff’s school be erected on the portion of plaintiff’s site farthest removed from defendant’s boundary. In addition, plaintiff has no plans for the immediate erection of a school. It contemplates the erection within 3 to 5 years of a 10-room school and the erection of an additional 10 rooms in 10 years. These plans are predicated upon the presently anticipated population growth.
Although it is established that there will be many target stations and that firing may be heavy at times, the court at this time can only speculate as to when there will be peak uses of the shooting center and whether the times of such uses will be times when a school may be in operation.
As was said in Thomas v. Musical Mut. Protective Union (121 N. Y. 45, 51): “ Courts do not sit for the purpose of determining speculative and abstract questions of law, or laying down rules for the future conduct of individuals in their business and social relations, but are confined in their judicial action to real controversies wherein the legal rights of parties are necessarily involved and can be conclusively determined. ’ ’
Injunctive relief is drastic and should not be granted except to prevent serious and irreparable injury and unless the need therefor is clearly proved (Thomas v. Musical Mut. Protective Union, supra, p. 52; McHenry v. Jewett, 90 N. Y. 58; People v. Canal Bd. of State of N. Y., 55 N. Y. 390).
A property owner has the right to make a reasonable use of his property, oven though his use thereof may cause some inconvenience or displeasure to his neighbor (Campbell v. Seaman, 63 N. Y. 568, 584). The court does not now know how the shooting center will be conducted or what limitations defendant may voluntarily impose upon its use. A court of equity will not act in anticipation of possible controversies which may never take placó (Thomas v. Musical Mut. Protective Union, supra, p. 57; 20 N. Y. Jur., Equity, § 95).
The law is well settled that the use one makes of his property and whether it constitutes a nuisance is one of degree and usually turns on the question of fact whether the use is reason *799 able or not under all the circumstances. McCarty v. Natural Carbonic Gas Co. (189 N. Y. 40, 49) states: “ The leading authorities in all jurisdictions hold that the question is whether the defendant makes ¿’reasonable or, as some judges express themselves, a proper use of his own property? Sometimes negligence is referred to as an element in the question. Judge Laxdox once pointedly said: ‘ A lawful business negligently conducted is not a lawful business lawfully conducted, ’ but, as the quotation implies, since a negligent use of one’s own property to the injury of another is an unreasonable use, the ultimate question after all is whether the use is reasonable. (Dunsbach v. Hollister, 49 Hun, 352, 354.) Negligence, wrong business methods, improper appliances and the like may bear upon but do not control the question of reasonable use. If the use is reasonable there can be no private nuisance, , but if the use is unreasonable and results in substantial injury, an actionable nuisance exists. Trifling results are disregarded, for the courts proceed with great caution and will not interfere with the use of property by the owner thereof unless such use is unreasonable, the injury material and actual, not fanciful or sentimental. Lex non favet votis delicatorum. (Genet v. Del. & Hud. Canal Co., 122 N. Y. 505, 529; Wood on Nuisances [3d ed.], 679; Jaggard on Torts, 744; Garrett on Law of Nuisances, 146.) ”
In an application of this kind the court must balance equities. Plaintiff’s concern for the well-being of its pupils is recognized. On the other hand, the court recognizes that a large segment of the population of Westchester County is interested in a sportsmen’s center. Representatives of sportsmen’s organizations showed the substantial number of sportsmen residing in the county desirous of such a facility. The defendant has devoted much time and study to the selection of a site for such purposes. The record establishes that the New York State Department of Conservation has approved this site, and finds it desirable in its hunter safety program.
It is a general principle that a court of equity will balance the equities between the parties in determining what if any relief to give. (Smith v. City of Buffalo, 191 Misc. 439; 20 N. Y. Jur., Equity, § 35.)
The denial of the injunction is based upon conditions as they now exist. For the reasons heretofore set forth, plaintiff is at this time unable to establish facts sufficient to entitle it to the relief sought. The complaint is, therefore, dismissed, without costs.
This opinion may be considered the decision of the court pursuant to section 440 of the Civil Practice Act.