W. Vincent Grady, J.
Student protests and demonstrations are prevalent in many colleges and universities today. The instant case presents a related facet of the. student-college relationship.
Yassar College, for over 100 years, has been an all-female institution. In January of this year, it received approximately 80 male exchange students from various colleges. On March 5, a code of regulations and enforcement was passed unanimously by the student senate established under the terms of the new constitution of the Yassar College Student Government Association. It had been given the responsibility for enacting and enforcing undergraduate social regulations. These new rules and regulations changed the college’s parietal regulations to permit the female students living in each corridor of the residential halls to decide whether or not they wished limitations to be placed upon the hours during which they might receive male guests in their rooms. An election was held on the proposed change, and 1,453 students voted; 1,375 voted for “ no restrictions ” on visiting hours, and 68 students voted for a ‘ ‘ limitation ’ ’ on visiting hours without moving from their corridor. Ten students voted in favor of living in a corridor with 1‘ limited visiting hours ’ ’ even if they would be required to move to a different corridor. It appears that the wishes of these 10 students have been followed.
The President of Yassar College did not exercise his power of veto over the student-enacted legislation, thereby giving *297 approval to the change in rules and regulations voted upon by the students and enacted by the Vassar College bcuaent Government Association.
Plaintiff, Edna W. Jones, the mother of a Vassar ColVo-e female student and on behalf of all parents of Vassar College students “ similarly affected”, commenced this action for a declaratory judgment that Vassar owed a duty to the plaintiffs to continue the former rules and regulations pertaining to parietals, and for an injunction restraining the defendants from changing such rules and regulations. Plaintiffs herein seek an order to show cause, a temporary injunction and stay, although they demand the relief prayed for in the complaint. Thereafter, defendants moved for summary judgment, and this application is now before the court.
Plaintiffs’ motion for “ an order granting the relief prayed for in the * * * summons and verified complaint ” is treated as a cross motion for summary judgment.
There are three basic issues involved in this controversy:
1. Does Vassar College owe a legal obligation to the plaintiffs not to change its rules and regulations pertaining to social conduct on the college campus?
2. Have plaintiffs shown that there are issues of fact with regard to irreparable damage to their legal interests which require a trial on the merits ?
3. Are there any issues of fact with respect to whether a declaratory judgment should be granted?
A review of the case law involving the student-college relationship does not reveal any case dealing with the issue as to whether a college has a contractual obligation not to change its rules and regulations governing social conduct.
The case of Matter of Carr v. St. Johns Univ. (17 A D 2d 632, affd. 12 N Y 2d 802) holds that there is an implied contract between a student and university and that if the student complies with the terms prescribed by the university, he will obtain the degree sought and the college cannot arbitrarily expel him. When a university expels a student, based on facts within its knowledge that justify the exercise of discretion, a court may not review the exercise of the university’s discretion.
There is a contractual relationship between the student and the college which is subject to the rules and regulations of the college (Anthony v. Syracuse Univ., 224 App. Div. 487; Samson v. Trustees of Columbia Univ., 101 Misc. 146, affd. 181 App. Div. 936). These cases hold that the courts will not interfere with the judgment of a college or university except in cases of the clearest abuse of discretion.
*298 Plaintiffs herein claim that there was an abuse of discretion on the part of Vassar 'College in permitting its students to make new rules and regulations with no restrictions on the visiting hours of males. Plaintiffs allege that this was a drastic change which constituted a breach of contract entitling the plaintiffs to the relief sought.
There is no genuine dispute as to any of the material facts surrounding the adoption and application of the new rules and regulations and the defendants concede that such change is drastic. However, does a drastic change in social rules and regulations, by a college, constitute a breach of its implied contract with a student or her parents? It is not controverted that all of the rules and regulations of Vassar, whether disciplinary, social, or academic, are subject to constant review. The Bulletin of Vassar College, Student Handbook Issue 1968-1969 (p. 31), states with respect to such regulations: “ These regulations have been kept to the minimum deemed necessary to secure and maintain decent and orderly conditions of living and working for all the members of this residential college. Within this basic framework, the individual student shall be as free as possible to conduct her own academic and non-academic life. This assumes that individual decisions will be accompanied by careful consideration of the standards maintained by the group. The privilege of making independent decisions involves the acceptance of a penalty should such choices violate either the spirit or the letter of the regulations.” The Vassar Catalogue for 1968-1969 (p. 193) also states that the “ College expects students to uphold its standards of personal and social conduct at all times when they are associated with Vassar.”
The position of the plaintiffs is that the above statements in the Bulletin and Catalogue of Vassar College do not permit the college to change its rules and regulations as it has done herein.
As the court so aptly stated in Sweezy v. New Hampshire (354 U. S. 234, 250): “ The essentiality of freedom in the community of American universities is almost self evident. No one should underestimate the vital role in a democracy that is played by those who guide and train our youth. To impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation. No field of education is so thoroughly comprehended by man that new discoveries cannot yet be made. Particularly is that true in the social sciences, where few, if any, principles are accepted as absolutes. Scholarship cannot flourish in an atmosphere of suspicion and distrust. Teachers and students must always *299 remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die.”
In academic communities greater freedoms may prevail than in society at large and the subtle fixing of these limits should, to a great degree, be left to the educational institution itself (Goldberg v. Regents of Univ. of California, 248 Cal. App. 2d 867). The judiciary must exercise restraint in questioning the wisdom of specific rules or the manner of their application, since such matters are ordinarily in the prerogative of school administrators rather than the courts (Barker v. Hardway, 283 F. Supp. 228).
There has been no showing by plaintiffs that there was an abuse of discretion by defendants in approving and adopting the new rules and regulations and this court will not interfere with defendants’ discretion.
The plaintiffs urge that the court should interfere to protect alleged invasions of the students’ right of privacy by forbidding unlimited visiting hours for males; however, as a matter of law, the plaintiffs are not entitled to an injunction, since the complaint and other affidavits do not show that the plaintiffs have suffered or will suffer immediate and irreparable damage. Mere speculation as to the possible consequences of conduct complained of in the complaint is insufficient (Board of Educ. v. County of Westchester, 34 Misc 2d 795, affd. without opinion 18 A D 2d 966).
The plaintiffs also seek a declaratory judgment, but the court cannot substitute its judgment as to the propriety of the new rules and regulations governing visiting hours of males for that of the administrative body which formulates such rules and regulations. Plaintiffs have failed to show a breach of the implied contract with the student or parent causing the plaintiffs irreparable injury; therefore, there are no legal rights of the plaintiffs which have been violated and declaratory judgment does not lie.
Private colleges and universities are governed on the principle of academic self regulation, free from judicial restraints (see Developments in the Law — Academic Freedom, 81 Harv. L. Rev. 1045). Vassar College, like other previously all-female institutions, has succumbed to the trend of coeducation and, with the advent of males, new difficulties will be encountered by the college administration. It is the privilege of a college, through its Student Government Association, to promulgate and enforce *300 rules and regulations for the social conduct of students without judicial interference.
Defendants’ motion for summary judgment is granted and the relief requested by plaintiffs is denied in all respects.