[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' APPLICATION FOR TEMPORARY INJUNCTION
In this application, the plaintiffs, members of the Yale Varsity Wrestling Team, seek to enjoin the defendant University from terminating the varsity wrestling program. Their underlying claim is that the termination of the program constitutes a breach of the contract for educational services entered into by the plaintiffs and the defendant.
The defendant urges the court to deny the relief requested on two grounds. The first is that the form of relief requested is inappropriate since the program was terminated in April and in November the plaintiffs acted, seeking a temporary injunction of a mandatory nature to, in effect, restore the program, and not to maintain the status quo.
The defendant also argues that there was no contract between the plaintiffs and Yale requiring Yale to maintain a wrestling program.
The parties disagree as to when the defendant eliminated the wrestling program. The plaintiffs claim it was as recently as November 15, 1991, when the present season began. If the court finds that to be the date, then this application, by suit I commenced in November 1991, must be construed as attempting to maintain the status quo. This is the primary purpose of a temporary injunction. Demming v. Bradstreet, 85 Conn. 650, 659
(1912).
On the other hand, the defendant argues that the termination was announced in April, 1991. If that were found to be the actual termination date, then the defendant contends the lapse of almost seven months is fatal, for there is no present program to continue. Instead, the defendant urges, the court is being asked to reinstate a defunct program.
"Relief by way of mandatory injunction is an extraordinary remedy and should only be granted under compelling circumstances." The appeal after remand, 185 Conn. 615 (1969), does not affect this statement. Herbert v. Smyh, 155 Conn. 78, 85 (1967). (citations omitted).
In view of the legal issues treated below and which control the case, the court declines to make a factual finding as to when the program was terminated.
 II.
To obtain a temporary injunction, it is the plaintiffs' burden under Connecticut law to satisfy the court that: CT Page 1516
1. They possess protectable interests which are at stake;
 2. They will prevail after a hearing on the merits for a permanent injunction;
 3. A denial of the temporary relief will cause them greater harm than will be suffered by the defendant Yale;
 4. They will suffer immediate, substantial and irreparable injury and lack an adequate remedy at law. Berin v. Olson, 183 Conn. 337, 340 (1981); Covenant Radio Corp. v. Ten Eighty Corp, 35 Conn. Sup. 1, 3 (1977).
The evidence presented to the court could arguably be determined in the plaintiffs' favor insofar as the third and fourth requirements are concerned.
However, the court is unable to find support for the plaintiffs' legal contention that the defendant has, in effect, contracted with these plaintiffs to provide them with four years of varsity wrestling. Absent such a conclusion, the plaintiffs will have failed to sustain their burden as to the first and second tests set forth above.
In general, the basic legal relationship between a student and a private university or college is contractual in nature. Zumbrun v. University of Southern California, 101 Cal.Rptr. 499,503 (Cal.Ct.App. 1972). "The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." Id., at 503. Questions of discipline, academic matters, and tuition and scholarship disputes have been addressed by courts and resolved on contract principles. At the same time, however, courts have been reluctant to apply strict contract law concepts to the unique relationship that exists between students and universities or colleges. As stated in Slaughter v. Brigham Young University,514 F.2d 622 (10th Cir.), cert. denied, 423 U.S. 989 (1975), at page 626:
 "some elements of the law of contracts are used and should be used in the analysis of the relationship between [the student] and the University. . . .This does not mean that `contract law' must be rigidly applied in all its aspects. . . . The student-university relationship is unique, and it should not be and cannot be stuffed into one doctrinal category."
Further, courts have enunciated a doctrine whereby private colleges and universities have been permitted a considerable CT Page 1517 decree of freedom, acknowledging that "private colleges and universities are governed on the principle of academic self regulation, free from judicial restraints." Jones v. Vassar College, 299 N.Y.S.2d 283, 287 (Sup.Ct. 1969).
In Mahavongsanan v. Hall, 529 F.2d 448 (5th Cir. 1976), the court held that the concept of
 "`a binding absolute unchangeable contract' is inappropriate in the academic setting in view of the `wide latitude and discretion afforded by the courts to educational institutions'."
However, several courts have recognized that there may be a cause of action for specific performance of a contract between a student and a college in proper circumstances. Williams v. Howard University, 528 F.2d 658, 660 (D.C. Cir.), cert. denied 429 U.S. 850
(1976).
With these broad concepts in mind, the court searched for cases in which a court considered a student grievance with respect to extracurricular activity in contract terms.
Conrad v. University of Washington, 814 P.2d 1242
(Wash.App. (1991), dealt with the university's decision not to renew the plaintiff's athletic scholarship. Contract law was applied in determining that the agreement between the plaintiff and the defendant was for one year, subject to renewal if the plaintiff displayed good behavior and was not guilty of misconduct. The court found due process violation in the conduct of the proceeding which resulted in the finding of misconduct on the part of the plaintiff.
The action of the university was upheld in terminating benefits to a student athlete in Waters v. University of South Carolina, 313 S.E.2d 346 (S.C.App. 1984). The plaintiff sued, alleging a breach of his contract with the school to provide him with a variety of assistance for four years. The plaintiff was injured but the university continued his assistance for a term well beyond the four years or eight semesters included in the agreement. When his aid was cut off, the plaintiff sued, relying on his contract and a university policy to carry injured athletes indefinitely. The court concluded the university was only obligated to give what it contracted for specifically and denied the plaintiff additional benefits.
In a case involving the right of a university to determine and implement its policies, a California court was asked by a student association to reverse the university president's refusal to approve the student organization's budget. The president found CT Page 1518 it not in conformity with the campus policy. The action was upheld as not contrary to the school's "statement on students' rights and responsibilities." Associated Students, etc. v. Trustees of California State University Colleges 128 Cal. Reptr. 601 (1976).
On the authority of these and other cases, the court disagrees with the statement in the defendant's brief that ". . .the laws of contract are not in fact being applied in student university cases. . . ." (Page 11, citing Dodd, The Non-Contractual Nature of the Student-University Contractual Relationship, 33 specific contract must be shown to exist if the student is to prevail. In areas of policy, administrative decisions, and the every day routine of running the institution, the courts have displayed a reluctance to dictate to the educational authorities.
The plaintiffs ask the court to find a contract between these students and the defendant University to provide a varsity wrestling program as part of the four-year undergraduate educational program.
The alleged contract is derived from the various University publications and written and oral communications of the wrestling coach, Bert Waterman.
Two of the plaintiffs testified that they would not have come to Yale if a varsity wrestling program were not available.
An examination of the various items relied on by the plaintiffs reveals that the defendant has emphasized that its primary function is educational and that extracurricular activities are subject to modification.
Thus, Plaintiff's Exhibit H, a letter Mr. Waterman sent to Yale admittees who were also wrestlers, reads in part:
 "Congratulations on your admission to Yale. I look forward to your being a Yale student and a member of the Yale wrestling team.
 Your acceptance at Yale is very significant for you. First, the admissions office is telling you that they are sure you can successfully do the academic work at Yale as well as your extracurricular activities. Second, only one out of eleven candidates applying this year were accepted. You are one of this select group. Considering that all of those applying represented the best students in high schools throughout the country, this is CT Page 1519 even more of an honor for you. This is an opportunity that you will get once in a lifetime to choose who and what you are for the rest of your life. You simply must take advantage of that opportunity."
He then goes on to say:
 "I would like to have you here as a wrestler and as a members of our wrestling team. I would expect that working together we can develop you into the best wrestler you can possibly be and help you to achieve your goals in wrestling. Yale has a good team and a good strong schedule. We constantly try to improve; we would like to have Yale wrestlers placing in Nationals every year. You can help us achieve that goal."
The emphasis in this letter is clearly on the academic advantages of Yale.
In his letter to potential applicants (Plaintiff's Ex. I), the coach advises:
 Simply put, are you going to college to be a student, to prepare for a social, cultural, economic, and career future? If so, Yale should be your first choice. If you are not going to college to be a student, do not bother to apply
This excerpt from the University bulletins indicates the defendant considered extracurricular activities as desirable but not necessary academic life:
 "There are organizations which have existed continuously for well over a century, while others rise and fall with the prevailing fashions or with the arrival and departure of a few key students. What does remain constant is the very high level of student participation."
Exhibits L, 6, 7 and 8, at page 47.
These same bulletins contains this caveat inside their front' covers: "The University reserves the right to withdraw or or modify the courses of instruction or to change the instructors at any time."
The defendant claims this would apply to extracurricular CT Page 1520 activities as well as courses of instruction. This is a logical position since the primary mission of the school is education and academic activities.
As noted by the defendant in its brief, even if varsity wrestling were considered part of a contract between the plaintiffs and Yale, and even if Yale had not specifically reserved the right to make changes, courts have recognized that universities must have the flexibility to make changes in furtherance of their educational responsibilities. As the Court, stated in Perretti v. Montana, 464 F. Sup. 784, 786 (D.Mont. 1979), rev'd on other grounds, 661 F.2d 756 (9th Cir. 1981):
 "Certainly in the period of time between a student's matriculation and graduation, an educational institution, which is a living, changing thing, may not reasonably be expected to remain static, and, conversely, change may reasonably be expected. Hence, each statement in a publication of what now is true does not necessarily become a term in the contract between the school and the student."
The court does not find a contract binding Yale to provide varsity wrestling during these plaintiffs' academic careers. Therefore, they have not shown that a protectable interest is at stake and that they will prevail on the merits, to a reasonable degree of certainty.
 III.
The plaintiffs have also urged the court to order the defendant to permit an alumni group to temporarily finance the varsity wrestling program. The University's athletic director was questioned about this and stated the defendant's position — that the university should not be permitting programs to rise or fall because of the interest of a particular group of alumni.
The court perceives its interference in this area as the type of action some of the court decisions cited above discourage.
Conclusion
In view of the court's conclusions of law, the plaintiffs' Application For A Temporary Injunction is denied.
Anthony DeMayo, Judge